No. 22-1093

# In the United States Court of Appeals
## for the Eighth Circuit

TERRI M. YATES
*Plaintiff-Appellee*

v.

SYMETRA LIFE INSURANCE COMPANY
*Defendant-Appellant*

**On Appeal from the United States District Court for the
Eastern District of Missouri, No. 4:19-cv-00154-RLW
District Court Judge Ronnie L. White**

---

### OPENING BRIEF OF APPELLANT

---

DANIEL E. TRANEN
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER
7751 Carondelet Avenue, Suite 203
Clayton, MO 63105
(618) 307-0200

JOSHUA BACHRACH
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER
2001 Market Street
Two Commerce Square, Suite 3100
Philadelphia, PA 19103
(215) 606-3906
joshua.bachrach@wilsonelser.com

*Counsel for Defendant-Appellant*

Appellate Case: 22-1093   Page: 1   Date Filed: 02/17/2022 Entry ID: 5128506

## SUMMARY OF THE CASE

This lawsuit involves a claim by Plaintiff-Appellee Terri Yates for Accidental Death Benefits under an ERISA[1] Plan that is insured by Defendant-Appellant Symetra Life Insurance Company. The district court initially entered judgment in favor of Symetra. Citing to this Court's decision in *Wert v. Liberty Life Assur. Co. of Boston, Inc.*, the district court recognized that "whether it is a denial letter or a plan document … claimants with notice of an available review procedure should know that they must take advantage of that procedure if they wish to bring wrongful benefit denial claims to court."[2] But in response to Ms. Yates' Motion to Alter or Amend, and relying on an out-of-circuit decision that is contrary to *Wert*, the court concluded that exhaustion of remedies was not required because the appeal language was only included in the decision letter. The district court then concluded that Ms. Yates was entitled to accidental death benefits and entered judgment in her favor.

Symetra believes that oral argument of 20 minutes per side should be heard to correct the district court's erroneous application of the law as the decision is contrary to the goals of ERISA as well as this Court's precedent.

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.*
[2] 447 F.3d 1060, 1066 (8th Cir. 2006) (internal quotations omitted).

i

## CORPORATE DISCLOSURE STATEMENT

Symetra Life Insurance Company, is an Iowa corporation with its principal place of business in Bellevue, Washington. Symetra Life Insurance Company is a wholly-owned subsidiary of Symetra Financial Corporation, which, in turn, is a wholly owned subsidiary of Sumitomo Life Insurance Corporation. Sumitomo Life Insurance Company is not publicly traded.

Appellate Case: 22-1093    Page: 3    Date Filed: 02/17/2022 Entry ID: 5128506

# TABLE OF CONTENTS

SUMMARY OF THE CASE ...................................................................... i

CORPORATE DISCLOSURE STATEMENT ...................................... ii

TABLE OF AUTHORITIES ................................................................... v

I.     JURISDICTIONAL STATEMENT ................................................. 1

II.    STATEMENT OF ISSUES PRESENTED FOR REVIEW ........................... 1

III.   STATEMENT OF THE CASE ...................................................... 2

     A.   Factual Background ...................................................... 2

     B.   Procedural History ....................................................... 4

IV.   SUMMARY OF THE ARGUMENT ............................................. 8

V.    ARGUMENT ............................................................................. 9

     I.    Appellate Standard of Review ...................................... 9

     II.   Ms. Yates' Lawsuit is Barred by Her Knowing Failure to
          Exhaust ...................................................................... 10

          A.   The exhaustion requirement under ERISA ............................ 10

          B.   Exhaustion is required when a claimant receives notice of
               the right to appeal in the decision letter ................................... 11

          C.   Because Ms. Yates had notice of her appeal rights she
               was required to appeal the denial of her claim ....................... 16

          D.   The lawsuit should be dismissed with prejudice ..................... 18

     III.  The District Court's Reconsidered Conclusion is Incorrect ............. 19

          A.   The Eight Circuit has recognized exhaustion as both
               contractual and judicially created ........................................... 21

          B.   The district court incorrectly concluded that appeal rights
               must be included in the plan document under ERISA ............. 22

Appellate Case: 22-1093   Page: 4   Date Filed: 02/17/2022 Entry ID: 5128506

C.      Ms. Yates' claim was not "deemed exhausted".......................27

D.      The district court's remedy is improper under *Brown v. JB Hunt* ...............................................................30

IV.      The District Court Erred By Refusing to Apply the Policy Exclusion for "Intentionally Self-Inflicted Injury" ............................30

A.      Mr. Yates' heroin overdose was intentionally self-inflicted .......................................................31

B.      The district court's mistaken analysis of the exclusion ............36

VI.      CONCLUSION...............................................................39

CERTIFICATE OF COMPLIANCE.....................................................41

VIRUS CHECK CERTIFICATION ....................................................42

CERTIFICATE OF SERVICE ...........................................................43

ADDENDUM

Appellate Case: 22-1093     Page: 5     Date Filed: 02/17/2022 Entry ID: 5128506

# TABLE OF AUTHORITIES

**Cases**

*Admin. Comm. Of Wal-Mart Stores, Inc. Health & Welfare Plan v. Shank*,
    500 F.3d 834 (8th Cir. 2007) .......................................................... 25, 26

*Anderson v. Alpha Portland Indus., Inc.*,
    752 F.2d 1293 (8th Cir. 1985) (en banc) ...................................... 24, 25

*Angevine v. Anheuser-Busch Companies Pension Plan*,
    646 F.3d 1034 (8th Cir. 2011) ............................................ 9, 11, 17, 30

*Back v. Danka Corp.*,
    335 F.3d 790 (8th Cir. 2003) ...................................................................1

*Bennett v. Federated Mut. Ins. Co.*,
    141 F.3d 837 (8th Cir. 1998) ...............................................................26

*Brown v. J.B. Hunt Transport Services, Inc.*,
    586 F.3d 1079 (8th Cir. 2009) ................................................ 17, 21, 30

*Chorosevic v. MetLife Choices*,
    600 F.3d 934 (8th Cir. 2010) ...............................................................21

*Conley v. Pitney Bowes*,
    34 F.3d 714 (8th Cir. 1994) ...................................... 10, 21, 23, 24, 25

*Davidson v. Prudential Ins. Co. of Am.*,
    953 F.2d 1093 (8th Cir.1992) ...............................................................28

*Dozier v. Sun Life Assurance Co. of Canada*,
    466 F.3d 532 (6th Cir. 2006) ...............................................................21

*Galman v. Prudential Ins. Co. of Am.*,
    254 F.3d 768 (8th Cir. 2001) .................................... 10, 11, 13, 22, 30

*Gayle v. United Parcel Service, Inc.*,
    401 F.3d 222 (4th Cir. 2005) ...............................................................18

v

Appellate Case: 22-1093    Page: 6    Date Filed: 02/17/2022 Entry ID: 5128506

*Gerdes v. John Hancock Mut. Life Ins. Co.*,
    199 F. Supp. 2d 861 (C.D. Ill. 2001) ............................................................ 34, 35

*Grasso Enterprises, LLC v. Express Scripts, Inc.*,
    809 F.3d 1033 (8th Cir. 2016) ...................................................................... 27, 29

*Holmes v. Colorado Coalition for Homeless*,
    762 F.3d 1195 (10th Cir. 2014) ...................................................................... 15, 16

*Holmes v. Proctor & Gamble Disability Benefit Plan*,
    228 F. App'x 377 (5th Cir. 2007) (unpublished) ...................................................19

*Holsinger v. New England Mutual Life Ins. Co.*,
    765 F. Supp. 1279 (E.D.Mich.1991) ...................................................................34

*King v. Hartford Life Ins. Co.*,
    414 F.3d 994 (8th Cir. 2005) ................................................................. 36, 37, 38

*Kinkead v. Southwestern Bell Corp.*,
    111 F.3d 67 (8th Cir. 1997) .......................................................... *passim*

*Makar v. Health Care Corp.*,
    872 F.2d 80 (4th Cir. 1989) ...................................................................21

*Malke v. Metro. Life Ins. Co.*,
    No. CIV.A. 11-11571-DPW, 2012 WL 6738250, 2012 U.S. Dist. LEXIS
    182230 (D. Mass. Dec. 27, 2012) .........................................................19

*Metropolitan Life Ins. Co. v. Price*,
    501 F.3d 271 (3d Cir. 2007) ...................................................................21

*McLain v. Metropolitan Life Ins. Co.*,
    820 F. Supp. 169 (D.N.J. 1993) .......................................................... 33, 34

*Midgett v. Wash. Grp. Int'l Long Term Disability Plan*,
    561 F.3d 887 (8th Cir.2009) ...................................................................28

*Milofsky v. American Airlines, Inc.*,
    442 F.3d 311 (5th Cir. 2006) ...................................................................21

Appellate Case: 22-1093    Page: 7    Date Filed: 02/17/2022    Entry ID: 5128506

*Nichols v. UniCare Life and Health Ins. Co.*,
  739 F.3d 1176 (8th Cir. 2104) ........................................................ 38, 39

*Paese v. Hartford Life and Accident Ins. Co.*,
  449 F.3d 435 (2d Cir. 2006) .................................................................21

*Perrino v. Southern Bell Tel. & Tel. Co.*,
  209 F.3d 1309 (11th Cir. 2000) ..................................................... 28, 29

*Schorsch v. Reliance Standard Life Ins. Co.*,
  693 F.3d 734 (7th Cir. 2012) ................................................................15

*Sheehan v. Guardian Life Ins. Co.*,
  372 F.3d 962 (8th Cir. 2004) ...................................................... 10, 38, 39

*Sigler v. Mutual Ben. Life Ins. Co.*,
  506 F. Supp. 542 (S.D. Iowa 1981) ............................................... 32, 33

*Sigler v. Mutual Ben. Life Ins. Co.*,
  663 F.3d 49 (8th Cir. 1981) ..............................................................2, 33

*Smith v. City of Des Moines, Iowa*,
  99 F.3d 1466 (8th Cir. 1996) ...............................................................12

*Terry v. Bayer Corp.*,
  145 F.3d 28 (1st Cir. 1998)...................................................................18

*United Paperworkers Int'l Union, AFL-CIO v. Jefferson Smurfit Corp.*,
  961 F.2d 1384 (8th Cir. 1992) ..............................................................27

*Vaught v. Scottsdale Healthcare Corp. Health Plan*,
  546 F.3d 620 (9th Cir. 2008) ...............................................................21

*Wallace v. Oakwood Healthcare, Inc.*,
  954 F.3d 879 (6th Cir. 2020) ......................................................... 20, 22

*Warmbrodt v. Reliance Standard Life Ins. Co.*,
  No. 4:16-cv-70 SNLJ, 2016 U.S. Dist. LEXIS 141096
  (E.D. Mo. Oct. 12, 2016) .....................................................................14

vii

*Wert v. Liberty Life Assur. Co. of Boston, Inc.*,
  447 F.3d 1060 (8th Cir. 2006) .................................................................... *passim*

*Williams v. Unum Life Ins. Co. of Am.*,
  11 F.4th 641 (8th Cir. 2021) .................................................................10

**Statutes**

28 U.S.C. § 1291 .................................................................................................1

28 U.S.C. § 1331 .................................................................................................1

29 U.S.C. § 1102(a)(1) .....................................................................................23

29 U.S.C. § 1102(b) .................................................................................. 14, 23

29 U.S.C. § 1102(c) ...........................................................................................23

29 U.S.C. § 1133 ................................................................... 9, 17, 22, 23, 25

29 U.S.C. § 1133(2) ...........................................................................................10

29 U.S.C. § 1332(e) .............................................................................................1

29 U.S.C. §§ 1001, *et seq*.............................................................. *passim*

**Regulations**

29 C.F.R. § 2560.503-1............................................................... 10, 19, 23

**Other Authorities**

https://www.cdc.gov/opioids/basics/epidemic.html .................................35

https://www.collinsdictionary.com/us/dictionary/english/injury ............................32

https://dictionary.cambridge.org/us/dictionary/english/intentionally.....................31

https://www.govinfo.gov/content/pkg/CHRG-114hhrg95685/html/CHRG-
  114hhrg95685.htm .................................................................................35

Appellate Case: 22-1093    Page: 9    Date Filed: 02/17/2022 Entry ID: 5128506

https://www.macmillandictionary.com/us/dictionary/american/self-inflicted ........32

https://www.merriam-webster.com/dictionary/intentionally...................................31

Appellate Case: 22-1093   Page: 10   Date Filed: 02/17/2022 Entry ID: 5128506

## I. JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of Missouri had subject-matter jurisdiction over the benefit dispute under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1332(e) (ERISA). This Court has appellate jurisdiction under 28 U.S.C. § 1291 in that this appeal is from a final order consisting of the January 3, 2022 Order granting Ms. Yates' Motion to Alter or Amend and awarding $50,000 in accidental death benefits [App. 194-223; R. Doc. 62 at 1-30] and the Judgment entered on the same date in favor of Ms. Yates and against Symetra for $50,000 [App. 224; R. Doc. 63]. Symetra timely filed its Notice of Appeal on January 13, 2022. [App. 225-226; R. Doc. 64 at 1-2].

## II. STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.     The Eight Circuit has "consistently imposed an exhaustion requirement where there is notice and where there is no showing that exhaustion would be futile."[3] Here, notice of appeal rights was provided and the claimant never argued futility but still failed to appeal the claim denial. Whether the district court should have dismissed the lawsuit based on the claimant's failure to exhaust. *See*, *Wert*, 447 F.3d at 1065; *Back v. Danka Corp.*, 335 F.3d 790, 792 (8th Cir. 2003).

---

[3] *Wert v. Liberty Life Assur. Co. of Boston, Inc.*, 447 F.3d 1060, 1065 (8th Cir. 2006).

1

II.    The Eighth Circuit has held that "whether it is a denial letter or a plan document … claimants with notice of an available review procedure should know that they must take advantage of that procedure if they wish to bring wrongful benefit denial claims to court." The denial letter Ms. Yates received explained her rights but she still did not appeal. Whether the district court improperly excused Ms. Yates' failure to exhaust because her appeal rights were stated only in the denial letter. *See*, *Wert v. Liberty Life Assur. Co. of Boston, Inc.*, 447 F.3d 1060, 1065 (8th Cir. 2006); *Kinkead v. Southwestern Bell Corp.*, 111 F.3d 67, 69-70 (8th Cir. 1997).

III.    Mr. Yates intentionally injected himself with heroin and then died from an overdose. Whether the district court erred by refusing to dismiss the lawsuit based on the plan's exclusion for intentionally, self-inflicted injuries. *See*, *Sigler v. Mutual Ben. Life Ins. Co.*, 663 F.3d 49, 50 (8th Cir. 1981).

## III.   STATEMENT OF THE CASE

### A.    <u>Factual Background</u>

Symetra insured the Life and Accidental Death portions of the Phelps County Bank Welfare Benefit Plan. App. 108; R. Doc. 42 at 1. Terri Yates was employed by Phelps County Bank and a participant in Plan. App. 108; R. Doc. 42 at 1. Coverage under the Symetra policy included Dependent Life and Accidental Death coverage for Ms. Yates' husband, Johnny Yates. App. 108; R. Doc. 42 at 1.

2

On December 20, 2016, Johnny Yates, then 50, was found dead in his bedroom by his parents, lying on the floor face down. App. 109; R. Doc. 42 at 2. The investigating officer found a needle in his arm and drug paraphernalia on the nightstand. App. 109; R. Doc. 42 at 2. According to the police report, Mr. Yates was a "reported heroin user". App. 109; R. Doc. 42 at 2. The investigator also noted bruising on the inside of Mr. Yates' forearms and on his abdomen which were believed to be injection sites for heroin. App. 109; R. Doc. 42 at 2.

According to the Toxicology Report, Mr. Yates' blood tested positive for Codeine – Free 9.8 ng/mL, "Morphine – Free" (heroin) 200 ng/mL and 6-Monoacetylmorphine – Free (a metabolite of heroin) 2.6 ng/mL. App. 109; R. Doc. 42 at 2. It is undisputed that Mr. Yates died from a heroin overdose and that the drug was intentionally taken. App. 109; R. Doc. 42 at 2.

Following Mr. Yates' death, Symetra paid to Ms. Yates the spousal life insurance benefit. App. 109; R. Doc. 42 at 2. But it denied the claim for Accidental Death benefits on June 27, 2017. App. 149-151; R. Doc. 42-4 at 1-3. The decision letter explained that Mr. Yates' cause of death was a heroin overdose and in support, cited to the results from the Toxicology Report. The letter then referred to the policy's exclusion for losses caused wholly or partly, directly or indirectly to "intentionally self-inflicted injury" as the basis for denying the claim. App. 150; R. Doc. 42-4 at 2.

3

At the conclusion of the decision letter, Symetra explained to Ms. Yates her appeal rights under ERISA as follows:

> You may request a review of this determination by submitting your request in writing to:

> Symetra Claims Department
> Attn: Appeals
> P.O. Box 1230
> Enfield, CT 06083
> Fax: 1-877-737-3650

> We will conduct only one review of this determination. You must submit a written request for a review within 60 days of the receipt of this letter. Your request should state any reasons why you feel this determination is incorrect and you should include any and all comments, documents, records and/or other information that support your claim. In particular, include evidence not already contained in your claim file to support your claim for benefits.

App. 151; R. Doc. 42-4 at 3. Ms. Yates never appealed Symetra's denial of the accidental death claim.

B.   <u>Procedural History</u>

Ms. Yates filed a Petition against Symetra in the Circuit Court of Phelps County, Missouri on January 9, 2019. App. 12; R. Doc. 1-1 at 1. Symetra removed the lawsuit to the United States District Court for the Eastern District of Missouri on January 31, 2019, based on federal question jurisdiction. App. 9; R. Doc. 1 at 1. A short time later, Symetra filed a Motion to Dismiss based on the applicability of ERISA and Ms. Yates' failure to exhaust. App. 46-47; R. Doc. 5 at 1-2. Ms. Yates

4

did not respond to the Motion. She instead filed her own Motion to Remand, which was denied. App. 78-81; R. Doc. 7 at 1-4, App. 86-91; R. Doc. 15 at 1-5. In the Order denying the remand motion, the district court also denied without prejudice the unopposed Motion to Dismiss.

On October 9, 2019, Ms. Yates filed a Motion for Leave to File an Amended Petition. App. 91-92; R. Doc. 17 at 1-2. The court granted the Motion and an Amended Complaint was filed against Symetra on October 25, 2019. App. 93-94; R. Doc. 20 at 1-2. Another Amended Complaint was filed by Ms. Yates on February 26, 2020 and Symetra filed its Answer on February 28, 2020. App. 100-104; R. Doc. 26 at 1-5.

Symetra filed a Motion for Summary Judgment pursuant to the Scheduling Order on February 26, 2021. App. 106-107; R. Doc. 40 at 1-2. The Motion argued that the lawsuit was barred by Ms. Yates' failure to appeal the claim denial. App. 106; R. Doc. 40 at 1. Symetra also argued that the claim was not payable based on the exclusion in the policy for intentionally self-inflicted injury. App. 109; R. Doc. 42 at 2. Ms. Yates did not file a Motion of her own but responded to Symetra's Motion. App. 152-160; R. Doc. 46 at 1-9.

On May 26, 2021, District Judge Ronnie White granted Symetra's Motion for Summary Judgment based on Ms. Yates' failure to exhaust her administrative remedies. App. 180-181; R. Doc. 54 at 15-16. The court recognized the issue as

"whether ERISA requires Plaintiff to exhaust an administrative appeal provision that is contained only in a denial letter, not the plan itself." App. 175; R. Doc. 54 at 10. Quoting from Eighth Circuit decisions, the district court recognized that when a claimant is provided notice of a plan's appeal procedures, they must take advantage of that right, regardless of whether the notice is provided in a denial letter or in the plan documents. App. 180; R. Doc. 54 at 15. The court then dismissed the lawsuit without prejudice.[4] App. 180; R. Doc. 54 at 15. A separate Order of Dismissal was entered by the district court on May 26, 2021. App. 182; R. Doc. 55.

In response to the court's decision, Ms. Yates filed a Motion to Alter or Amend on June 18, 2021. App. 183-184; R. Doc. 56 at 1-2. Symetra opposed the Motion. App. 185-192; R. Doc. 58 at 1-8. On January 3, 2022, Judge White entered a Memorandum and Order granting the Motion to Alter or Amend, deciding that Ms. Yates was not required to exhaust administrative remedies and further concluding that the denial of accidental death benefits was erroneous. App. 194; R. Doc. 62 at 1.

Without addressing the language in Eighth Circuit decisions cited in the earlier Order dismissing the lawsuit, the district court concluded that an appeal was

---

[4] As set forth below, the lawsuit should have been dismissed with prejudice since the time to bring an appeal had passed.

Appellate Case: 22-1093    Page: 16    Date Filed: 02/17/2022 Entry ID: 5128506

not necessary because the requirement was not stated in the plan document, even though it was included in the decision letter. App. 198; R. Doc. 62 at 5. In support of this conclusion, the district court cited to a decision from the Sixth Circuit, rather than the Eighth Circuit decisions relied on previously. App. 198; R. Doc. 62 at 5. Addressing the merits of the claim denial *de novo*, the district court concluded that the denial of benefits based on the exclusion for intentionally self-inflicted injuries was wrong and awarded $50,000 in benefits. App. 222; R. Doc. 62 at 29.

Symetra timely filed a Notice of Appeal from the district court's January 3, 2022 Order granting Ms. Yates' Motion to Alter or Amend on January 13, 2022. App. 225; R. Doc. 64.

7

## IV. SUMMARY OF THE ARGUMENT

Based on the many important goals it serves, the Eighth Circuit requires ERISA claimants to exhaust their available administrative remedies before bringing a lawsuit. The only exceptions to the exhaustion requirement recognized by this Court are when it would be futile of there is no administrative remedy to pursue. None of these exceptions were relied on in this case.

In the claim denial letter sent to Ms. Yates, Symetra told her how to appeal the decision and the deadline to do so. No appeal was ever submitted. But according to the district court, Ms. Yates did not have to appeal the decision because appeal rights were only provided in the decision letter. Contrary to this conclusion, in *Kinkead v. Southwestern Bell Corp.* and again in *Wert v. Liberty Life*, this Court has held that "whether it is a denial letter or a plan document … 'claimants with notice of an available review procedure should know that they must take advantage of that procedure if they wish to bring wrongful benefit denial claims to court.'" The district court's decision excusing the failure to exhaust in this case is contrary to precedent and clearly wrong.

The district court alternatively concluded that exhaustion of remedies was not required because the claim was "deemed denied" because appeal rights were not included in the plan document. There is no section of the ERISA statute which requires the inclusion of this language in the plan document. But the district court's

8

conclusion is wrong for an additional reason. Under this Circuit's law, a court will look at the entire claim denial process to determine whether the claimant received a full and fair review. The notice included in the denial letter gave Ms. Yates the information she needed for a full and fair review. Symetra cannot be blamed for her failure to follow the instructions she received.

Finally, the district court erred by awarding accidental death benefits to Ms. Yates. Even if Ms. Yates was deprived of a full and fair review – which did not happen – the remedy under this Court's decisions is to remand the claim for completion of the review process, not an award of benefits. The district court also erred when it concluded that Mr. Yates' death from a self-administered heroin overdose was not an intentionally self-inflicted injury that is excluded from coverage.

The decision of the district court should be reversed and judgment entered in favor of Symetra.

## V.    ARGUMENT

## I.    <u>Appellate Standard of Review</u>

"Exhaustion of remedies is a threshold legal issue [the Court of Appeals] review[s] de novo."[5]

---

[5] *Angevine v. Anheuser-Busch Companies Pension Plan*, 646 F.3d 1034, 1037 (8th Cir. 2011). *See also*, *Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan,* 111 F.3d 67, 68 (8th Cir. 1997).

9

The Court of Appeals also reviews *de novo* a district court's grant of summary judgment[6] and its conclusions of law.[7]

## II. Ms. Yates' Lawsuit is Barred by Her Knowing Failure to Exhaust

### A. The exhaustion requirement under ERISA

"In this circuit, benefit claimants must exhaust this [appeal] procedure before bringing claims for wrongful denial to court."[8] The exhaustion requirement is derived from 29 U.S.C. § 1133(2), which states that "every employee benefit plan shall … afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." The Department of Labor regulations implementing 29 U.S.C. § 1133 requires that a notification of an adverse benefit decision include "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review."[9]

In *Galman*, this Eighth Circuit explained the importance of requiring exhaustion of remedies:

---

[6] *Williams v. Unum Life Ins. Co. of Am.*, 11 F.4th 641, 643 (8th Cir. 2021).
[7] *Sheehan v. Guardian Life Ins. Co.*, 372 F.3d 962, 967 (8th Cir. 2004).
[8] *Galman v. Prudential Ins. Co. of Am.*, 254 F.3d 768, 770 (8th Cir. 2001). *See also*, *Conley v. Pitney Bowes*, 34 F.3d 714, 716 (8th Cir. 1994).
[9] 29 C.F.R. § 2560.503-1(g).

Appellate Case: 22-1093    Page: 20    Date Filed: 02/17/2022 Entry ID: 5128506

Exhaustion serves many important purposes — giving claims administrators an opportunity to correct errors, promoting consistent treatment of claims, providing a non-adversarial dispute resolution process, decreasing the cost and time of claims resolution, assembling a fact record that will assist the court if judicial review is necessary, and minimizing the likelihood of frivolous lawsuits."[10]

Based on its "important purposes," courts "excuse the exhaustion requirement only when pursuing an administrative remedy would be futile or there is no administrative remedy to pursue."[11]

B. Exhaustion is required when a claimant receives
notice of the right to appeal in the decision letter

In its 2021 Memorandum and Order, the district court concluded that Ms. Yates "was required to exhaust the administrative appeal remedy she was given notice of in the Denial Letter, although there was no appeal provision or requirement in the Policy itself." App. 180; R. Doc. 54 at 15. In reaching the conclusion, the district court cited to prior decisions from this Court. App. 180; R. Doc. 54 at 15. But in response to Ms. Yates' Motion to Alter or Amend, the district court chose to instead rely on a decision from the Sixth Circuit. App. 198, R. Doc. 62 at 5. Based on this out-of-circuit decision, it concluded that exhaustion was not required because the appeal procedure was not stated in the plan

---

[10] *Id.*
[11] *Angevine v. Anheuser-Busch Cos. Pension Plan,* 646 F.3d 1034, 1037 (8th Cir. 2011).

Appellate Case: 22-1093    Page: 21    Date Filed: 02/17/2022 Entry ID: 5128506

document. App. 198, R. Doc. 62 at 5. This conclusion is contrary to the law of this Circuit and it is wrong.

To state the obvious, it is the law of this Circuit that must be followed, unless there is a "clear indication" that it has been overruled.[12] In multiple cases, the Eighth Circuit has recognized that when a claimant receives notice of appeal rights in the decision letter, it triggers the exhaustion requirement.[13] The issue was first addressed by this Court in *Kinkead*, where the participant sought benefits from two of her employer's benefit plans.

In *Kinkead*, the claimant appealed from the district court decision to dismiss the lawsuit for failure to exhaust. Addressing Kinkead's argument that the notice of appeal rights was deficient, the Court stated:

> The Committee's *letter* adequately described the claim review process. It advised Kinkead she had a right to further review and to examine the Committee's file. It told her where and when to submit a request for review and whether she could submit additional information ... *Given the practical reasons favoring exhaustion, claimants with notice of an available review procedure should know that they must take advantage of that procedure if they wish to bring wrongful benefit denial claims to court*.[14]

---

[12] *Smith v. City of Des Moines, Iowa*, 99 F.3d 1466, 1470 (8th Cir. 1996).

[13] *Kinkead v. Southwestern Bell Corp.*, 111 F.3d 67, 69-70 (8th Cir. 1997); *Wert*, 447 F.3d at 1065.

[14] *Kinkead*, 111 F.3d at 69 (emphasis added).

12

Because Kinkead did not appeal the claim denial notwithstanding the notice she received, the Court affirmed the dismissal of the lawsuit.[15]

In *Wert*, this Court again affirmed the dismissal of a lawsuit because the plaintiff failed to follow the appeal procedures set forth in the decision letter. The Court noted that "[c]ases since *Kinkead* have consistently imposed an exhaustion requirement where there is notice and where there is no showing that exhaustion would be futile."[16] In her appeal, Wert argued both the language in the plan and in the denial letter were deficient, excusing exhaustion.[17] The Court disagreed.

In response to Wert's arguments, the Court noted the reasons behind the exhaustion requirement. "The rationale stems from the sound policy of not wanting courts to review plan administrators' decisions based on initial, often succinct denial letters in the absence of complete records … [and] through the review process the parties aid the court by "assembling a fact record that will assist the court if judicial review is necessary."[18] The Court further noted as rationale for exhaustion its "many important purposes—giving claims administrators an opportunity to correct errors, promoting consistent treatment of claims, providing a

---

[15] *Id*. at 70.
[16] *Wert*, 447 F.3d at 1065.
[17] *Id*. at 1066.
[18] *Id*. (quoting *Galman*, 254 F.3d at 770-71).

Appellate Case: 22-1093    Page: 23    Date Filed: 02/17/2022 Entry ID: 5128506

non-adversarial dispute resolution process, [and] decreasing the cost and time of claims resolution . . . ."[19]

After identifying these important rationales for exhaustion, the Court in *Wert* stated that it "finds *no compelling basis to distinguish between our application of these rationales in the context of denial letters and plan documents*."[20] Therefore, "whether it is a denial letter or a plan document … 'claimants with notice of an available review procedure should know that they must take advantage of that procedure if they wish to bring wrongful benefit denial claims to court.'"[21]

Quoting from this Court's decision in *Wert*, in *Warmbrodt v. Reliance Standard Life Ins. Co*., the district court also dismissed a lawsuit based on failure to exhaust.[22] In that case, there was also no language in the policy regarding appeal rights. But the court still held that the lawsuit should be dismissed based on the claimant's failure to exhaust. In support of its conclusion, the court stated that while a plan must identify appeal procedures in the decision letter under the regulation, "that information is not required to be in the plan document" under 29 U.S.C. § 1102(b).[23] Because the claimant was on notice of the plan's appeal

---

[19] *Id*.
[20] *Id*. (emphasis added).
[21] *Id*. (quoting *Kinkead*, 111 F.3d at 69).
[22] No. 4:16-cv-70 SNLJ, 2016 U.S. Dist. LEXIS 141096 (E.D. Mo. Oct. 12, 2016).
[23] *Id*.

Appellate Case: 22-1093     Page: 24     Date Filed: 02/17/2022 Entry ID: 5128506

procedures through the decision letter, the court concluded that exhaustion of remedies was required.

Outside of this Circuit, courts have also recognized that a claimant must follow appeal instructions stated only in the decision letter before bringing a lawsuit. The Seventh Circuit in *Schorsch* focused on the language in the decision letter and the ERISA claim regulation when it concluded that exhaustion was required.[24] Schorsch argued that exhaustion should be excused because the defendant failed to establish or follow reasonable claim procedures.[25] The Seventh Circuit explained that the defendant's termination notice told her how and where to request a review of the decision as well as the deadline to do so.[26] Because the claimant failed to demonstrate that she was denied access to the plan's administrative review process, the court upheld the dismissal of the lawsuit based on failure to exhaust.[27]

The Tenth Circuit's decision in *Holmes v. Colorado Coalition for Homeless* is also on point and confirms that notice of appeal rights in a denial letter triggers the exhaustion requirement.[28] The claim administrator in *Holmes* allowed for two

---

[24] *Schorsch v. Reliance Standard Life Ins. Co*., 693 F.3d 734, 742 (7th Cir. 2012).
[25] *Id*.
[26] *Id*.
[27] *Id*.
[28] 762 F.3d 1195, 1213-14 (10th Cir. 2014).

15

levels of appeals. No plan document referred to the second level appeal but the first appeal denial letter notified the claimant of the procedures for the second appeal. The defendant sought dismissal of the lawsuit because the plaintiff did not appeal the second denial. Based on the claimant's knowledge of her appeal rights, the Tenth Circuit concluded that the lawsuit should be dismissed for failure to exhaust.

Explaining its decision to dismiss the lawsuit, the Tenth Circuit held:

> Ms. Holmes has not alleged that she lacked notice of the two-level internal review process, that she was confused about the review process, or that she reasonably believed seeking a second-level review was merely voluntary. Nowhere in the briefing before this court or the district court does Ms. Holmes explain how Union Security's failure to describe the second-level review in the SPD caused her not to follow the review process ...."[29]

These statements are consistent with the language in *Kinkead* and *Wert* as well as the goals of ERISA. Therefore, *Holmes* also support the dismissal of this lawsuit for failure to exhaust.

C.     Because Ms. Yates had notice of her appeal rights
       <u>she was required to appeal the denial of her claim</u>

*Kinkead*, *Wert* and the other decisions cited above confirm that it is the claimant's receipt of notice of the appeal rights that triggers the requirement to exhaust remedies. Again, "[c]ases since *Kinkead* have consistently imposed an exhaustion requirement where there is notice and where there is no showing that

---

[29] *Id*. at 1214.

Appellate Case: 22-1093     Page: 26     Date Filed: 02/17/2022 Entry ID: 5128506

exhaustion would be futile."[30] This includes this Court's decision in *Angevine*, which held that courts "excuse the exhaustion requirement *only* when pursuing an administrative remedy would be futile or there is no administrative remedy to pursue."[31] In *Brown v. J.B. Hunt Transport Services, Inc.*, the Eighth Circuit again stated that exhaustion is only excused "[w]hen an ERISA-governed plan fails to comply with its antecedent duty under § 1133 to provide participants with notice and review" or it would be futile.[32] Those limited circumstances are not present in this case.

Ms. Yates has never argued that appealing the claim denial would be futile. And Symetra fulfilled its obligations under 29 U.S.C. § 1133 and the applicable regulation by providing to her instructions on how to appeal the denied claim in the June 27, 2017 decision letter. App. 151; R. Doc. 42-4 at 3. Ms. Yates has also not argued that these instructions were deficient or in any way prevented her from adequately appealing the claim denial. Therefore, there is no excuse for her failure to exhaust that is recognized by the Eighth Circuit. Under the law of this Circuit, this failure to exhaust bars Ms. Yates' lawsuit. The district court erred on reconsideration by finding that an administrative appeal was not required.

---

[30] *Wert*, 447 F.3d at 1065.
[31] *Angevine,* 646 F.3d 1at 1037 (emphasis added).
[32] 586 F.3d 1079, 1084-85 (8th Cir. 2009).

17

D.   <u>The lawsuit should be dismissed with prejudice</u>

In its original decision on Symetra's Motion for Summary Judgment, the district agreed that the lawsuit was forbidden by Ms. Yates' failure to exhaust. App. 180; R. Doc. 54 at 15. But the court only dismissed the lawsuit without prejudice. App. 180; R. Doc. 54 at 15. Under the circumstances, this was wrong. The lawsuit should have been, and now should be, dismissed with prejudice.

In *Gayle v. United Parcel Service, Inc*., a decision from the Fourth Circuit, the claimant also failed to submit an administrative appeal from the claim denial in time.[33] After rejecting the claimant's argument for equitable tolling of the deadline, the court addressed whether the dismissal should be with or without prejudice. The court explained that because the "opportunity" to appeal had expired before the lawsuit was filed, exhaustion of remedies was "impossible."[34] "In such situations dismissal with prejudice is required."[35] In *Terry v. Bayer Corp*., the First Circuit also held that "[i]t would hardly make sense to permit the filing of [a late] appeal ... in light of the internal claims procedures' aims of consistency and economy."[36]

---

[33] 401 F.3d 222, 226-27 (4th Cir. 2005).
[34] *Id*. at 230.
[35] *Id*.
[36] 145 F.3d 28, 40 (1st Cir. 1998).

18

Other courts have agreed that when there is no longer an ability to appeal a decision since the time to do so has run, dismissal with prejudice is required.[37]

Consistent with the ERISA regulation, Symetra told Ms. Yates in the June 27, 2017 decision letter that she had sixty days to appeal the claim denial. App. 150; R. Doc. 42-4 at 3. No appeal was ever submitted and no recognized excuse for failing to do so has been provided. Instead, Ms. Yates filed her lawsuit more than one year after receiving the claim denial letter. Because the time to appeal ran long before the Complaint was filed, the decision of the district court should be reversed and the lawsuit should be dismissed with prejudice.

## III. The District Court's Reconsidered Conclusion is Incorrect

In its 2021 decision, the district court recognized that under the ERISA claim regulation, the procedures for appealing a claim denial must be included in the decision letter. App. 172-173; R. Doc. 54 at 7-8 (quoting 29 C.F.R. § 2560.503-1). And quoting from this Court's decision in *Kinkead*, the court emphasized that:

> *Given the practical reasons favoring exhaustion, claimants with notice of an available review procedure should know that they must take advantage of that procedure if they wish to bring wrongful benefit denial claims to court.*

---

[37] *See e.g. Holmes v. Proctor & Gamble Disability Benefit Plan,* 228 F. App'x 377, 379 (5th Cir. 2007) (unpublished); *Malke v. Metro. Life Ins. Co.,* No. CIV.A. 11-11571-DPW, 2012 WL 6738250, *2, 2012 U.S. Dist. LEXIS 182230, *5 (D. Mass. Dec. 27, 2012).

19

App. 178; R. Doc. 54 at 13.[38] Then, quoting from *Wert*, the district court stated that "[c]ases since Kinkead have consistently imposed an exhaustion requirement where there is notice and where there is no showing that exhaustion would be futile." App. 178; R. Doc. 54 at 13.[39] Therefore, Ms. Yates "was required to exhaust the administrative appeal remedy she was given notice of in the Denial Letter, although there was no appeal provision or requirement in the Policy itself." App. 180; R. Doc. 54 at 15.

In response to Ms. Yates' Motion to Alter or Amend, the district court changed its mind. Relying on a decision from the Sixth Circuit, the court stated that because the appeal procedures were not stated in the policy/plan document, exhaustion was not required. App. 198; R. Doc. 62 at 5.[40] Alternatively, the court concluded that the claim was deemed exhausted under the ERISA claim regulation. In both ways, the district court failed to correctly apply the law of this Circuit as well as the language in the ERISA statute. Therefore, the decision should be reversed.

---

[38] *Kinkead*, 111 F.3d at 69 (emphasis added by the district court).
[39] *Wert*, 447 F.3d at 1065.
[40] *Citing Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 887-888 (6th Cir. 2020).

Appellate Case: 22-1093     Page: 30     Date Filed: 02/17/2022 Entry ID: 5128506

A. The Eight Circuit has recognized exhaustion
as both contractual and judicially created

The district believed that because the claim review procedures were not included in any plan document, "Symetra cannot impose such a requirement." App. 198; R. Doc. 62 at 5. But in *Conley*, the Eighth Circuit acknowledged that exhaustion of remedies is "a creature either of contract *or* judicial invention."[41] In *Brown*, the Eighth Circuit again stated that the exhaustion requirement was "judicially created."[42] This Court is not alone in this regard. Most Circuit Courts of Appeals have also recognized exhaustion of remedies under ERISA as being judicially created.[43]

Believing that exhaustion was only a contractual requirement, the district court excused it in this case. But *Conley* and *Brown* inform us that exhaustion is also judicially created based on the important goals it serves. Exhaustion of remedies allows ERISA-governed plans to obtain complete information before making a decision which is a "substantial benefit to reviewing courts."[44] Other

---

[41] *Conley*, 34 F.3d at 716 (emphasis added).

[42] 586 F.3d at 1084.

[43] *See*, *e.g*., *Paese v. Hartford Life and Accident Ins. Co*., 449 F.3d 435, 443 (2d Cir. 2006); *Metropolitan Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007); *Makar v. Health Care Corp.,*872 F.2d 80, 83 (4th Cir. 1989); *Milofsky v. American Airlines, Inc*., 442 F.3d 311, 313 (5th Cir. 2006); *Dozier v. Sun Life Assurance Co. of Canada*, 466 F.3d 532, 536 (6th Cir. 2006); *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 627 (9th Cir. 2008).

[44] *Chorosevic v. MetLife Choices* 600 F.3d 934, 941 (8th Cir. 2010) (quoting *Back*, 335 F.3d at 792).

21

"important purposes" that are served by the exhaustion requirement, including giving administrators the opportunity to correct errors and allow the parties a chance to resolve the dispute.[45]

The reasons for exhaustion of remedies do not become less important when appeal language is not included in a plan document, but the claimant is still on notice her rights through the decision letter. It is for this reason that this Court has held that "whether it is a denial letter or a plan document … claimants with notice of an available review procedure should know that they must take advantage of that procedure if they wish to bring wrongful benefit denial claims to court."[46] The district court's decision in this case is contrary to ERISA's objectives as well as the only excuses for failing to exhaust that have been recognized by this Court.

   B.   The district court incorrectly concluded that appeal
        rights must be included in the plan document under ERISA

Citing to the Sixth Circuit's decision in *Wallace*, the district court concluded that a plan may not rely on failure to exhaust unless the requirement is stated in the plan document. App. 198; R. Doc. 62 at 5. But there is no such requirement in the statute. 29 U.S.C. § 1133 requires the "employee benefit plan" to provide notice in writing of the denial and to "afford a reasonable opportunity … for a full and fair review." There is no dispute that Symetra complied with these requirements.

---

[45] *Galman*, 254 F.3d at 770.
[46] *Wert*, 447 F.3d at 1062.

Appellate Case: 22-1093   Page: 32   Date Filed: 02/17/2022 Entry ID: 5128506

The contents of a plan's "written instrument" are identified in 29 U.S.C. § 1102(a)(1). The ERISA statute identifies both "requisite" and "optional" features included in a plan's "written instrument."[47] Contrary to the district court's conclusion, appeal procedures are not among the features identified in this or any other section of the statute to be included in the plan document.

Symetra's position is confirmed by the language in the regulation implementing 29 U.S.C. § 1133. It states that the *decision letter* must include "[a] description of the plan's review procedures and the time limits applicable to such procedures."[48] While Paragraph (h) of the regulation further states that plans "shall establish and maintain a procedure" to appeal a claim denial, it does not state that this procedure must be included in the plan document. Symetra complied with ERISA's appeal requirements.

In its 2022 decision, the district court stated that its conclusion that appeal procedures must be included in the plan document is supported by *Conley*. App. 198; R. Doc. 62 at 5. But the facts in that case were very different. The plan document in *Conley* included language stating that the administrator would provide "any person whose claim for benefits has been denied ... a written notification of the denial. The written notification shall include ... an explanation of the claim

---

[47] 29 U.S.C. § 1102(b)-(c).
[48] 29 C.F.R. § 2560.503-1(g)(1)(iv).

Appellate Case: 22-1093     Page: 33     Date Filed: 02/17/2022 Entry ID: 5128506

appeal procedure."[49] The Court concluded that the inclusion of this language in the plan created a contractual obligation.[50] Because the plan failed to perform its antecedent duty to provide notice, it could not rely on the exhaustion clause as a defense to the claim.[51]

Contrary to the decision of the district court, *Conley* did not hold that appeal language must be included in all plan documents. It only concluded that when it is included in the plan, "the freedom of contract between autonomous parties is a more important principle than even the very important judicially-created doctrine of exhaustion."[52] But the real problem in *Conley* was that the claimant never received notice of the appeal process from any source that would allow exhaustion.[53] Here, Ms. Yates received notice in the denial letter but ignored it. App. 149-151; R. Doc. 42-4 at 1-3.

The district court also cited to the 1985 decision in *Anderson v. Alpha Portland Indus., Inc*., as supporting its belief that appeal procedures must be included in the plan document.[54] But as stated in the district court's description of *Anderson*, "retirees were not required to exhaust an arbitration procedure under an

---

[49] *Conley*, 34 F.3d at 717.
[50] *Id*. at 717.
[51] *Id*. at 717-18.
[52] *Id*. at 718.
[53] *Id*. at 718-19.
[54] 752 F.2d 1293, 1295 (8th Cir. 1985) (en banc).

Appellate Case: 22-1093     Page: 34     Date Filed: 02/17/2022 Entry ID: 5128506

ERISA plan that did not include explicit plan language extending the plan's arbitration requirement to retirees as a class of participants." App. 198-199; R. Doc. 62 at 5-6. This case does not involve the enforceability of an arbitration provision in a collective bargaining agreement like *Anderson*.

Also, unlike this case, the retiree plaintiffs in *Anderson* were not informed from any source that exhaustion was required.[55] Moreover, the Court questioned "whether mandatory arbitration would meet statutory requirements as to opportunities for fiduciary review of denials of benefit claims. 29 U.S.C. § 1133."[56] Thus, *Anderson* addressed very different issues than those involved here.

Unlike the plans in *Anderson and Conley*, Symetra did not breach a contractual requirement. Nor is there a requirement under ERISA that appeal procedures must be included in the plan document. And most important, Symetra gave Ms. Yates notice of her appeal rights under ERISA. The district court should have relied on *Wert* and *Kinkead* as it correctly did when it granted Symetra's Motion for Summary Judgment, not *Conley* and *Anderson*.

The remaining cases relied on by the district court for its position are also inapposite. The facts in this case are dissimilar to *Admin. Comm. Of Wal-Mart*

---

[55] *Id*. at 1300.

[56] *Id*.

25

*Stores, Inc. Health & Welfare Plan v. Shank*, which was cited by the district court.[57] App. 199; R. Doc. 62 at 6. There, the plaintiff/plan sought to alter the terms of the plan's subrogation provision under the guise of equitable relief.[58] The Court rejected the plan's arguments as contrary to "ERISA's purposes of upholding the integrity of written plans and protecting the interest and expectations of all participants and beneficiaries."[59]

Unlike the plan in *Shank*, Symetra's position does not contradict any plan terms. Reliance on the exhaustion defense is no different than relying on a state law statute of limitations. Neither one is a substantive term that must be included in the plan document. But this Court has enforced state statutes of limitations to ERISA benefit claims without any suggestion that the clause must be stated in the plan.[60] As for Ms. Yates' expectations, based on the notice of appeal rights she received, it would be unreasonable to expect any outcome other than dismissal of the lawsuit based on her failure to comply.

According to the district court, "Symetra cannot add new appeal procedures by including them in the benefits denial letter it sent to Plaintiff, because this would be contrary to the terms of the formal written plan." App. 200; R. Doc. 62 at

---

[57] 500 F.3d 834, 838-39 (8th Cir. 2007).

[58] *Id.*

[59] *Id.*

[60] *Bennett v. Federated Mut. Ins. Co.,* 141 F.3d 837, 838 (8th Cir. 1998).

26

7. This conclusion would only apply if there was language in the plan document telling participants that exhaustion was not required. Obviously, there is no such language in this plan. In the case cited by the district court for this point, the party relied on an oral collective bargaining agreement which contradicted the written terms of the benefit plan.[61] Again, here, there is no contradictory language in the policy. Therefore, the case relied on by the district court does not support its conclusion and Ms. Yates had to timely appeal the claim denial before bringing a lawsuit.

C.     Ms. Yates' claim was not "deemed exhausted"

Based on the same reasoning and cases described above, the district court alternatively concluded that Ms. Yates' claim was deemed exhausted because Symetra included the appeal procedures only in its denial letter. App. 222; R. Doc. 62 at 29. Again, the cases relied on by the district court do not support this conclusion. But the district court's decision is also contrary to other decisions from this Court regarding a plan's compliance with ERISA regulations.

In *Grasso Enterprises, LLC v. Express Scripts, Inc.*, the Court discussed at length the ERISA claim procedures under the regulation.[62] While stating that the Eighth Circuit has "not expressly adopted this substantial compliance standard"

---

[61] *United Paperworkers Int'l Union, AFL-CIO v. Jefferson Smurfit Corp.*, 961 F.2d 1384, 1386 (8th Cir. 1992).
[62] 809 F.3d 1033, 1037-38 (8th Cir. 2016).

27

used in other circuits, "we have applied a substantively equivalent standard, evaluating whether a plan's entire claim denial process provided the claimant 'a full and fair review of her claim.'"[63]

Looking at the "entire claim denial process" in this case, Ms. Yates received a full and fair review. Ms. Yates' only excuse for not appealing the denial is that appeal rights language should have been included in the policy. But Symetra notified Ms. Yates of her appeal rights in the denial letter we know she received. App. 149-151; R. Doc. 42-4 at 1-3. In those cases in which exhaustion was excused other than for futility, the participants were not made aware of their appeal rights from any source. The facts here are very different and do not lend themselves to the same conclusion.

In *Perrino v. Southern Bell Tel. & Tel. Co*., the Eleventh Circuit addressed the exact issue presented here and concluded that exhaustion of remedies could not be excused.[64] There, the appellants argued that there should be a "new exception" to the exhaustion requirement for a plan's "noncompliance with ERISA's technical requirements (for example, creating a summary plan description, or delineating a

---

[63] *Id*. at 1038 (citing *Midgett v. Wash. Grp. Int'l Long Term Disability Plan,* 561 F.3d 887, 896 (8th Cir.2009) and *Davidson v. Prudential Ins. Co. of Am.,* 953 F.2d 1093, 1096 (8th Cir.1992)).
[64] 209 F.3d 1309, 1316-17 (11th Cir. 2000).

Appellate Case: 22-1093    Page: 38    Date Filed: 02/17/2022 Entry ID: 5128506

formal claims procedure)."[65] The court rejected the argument as "unpersuasive" and "decline[d] to create an exception to the exhaustion requirement in this case."[66]

Similar to this Court's statement in *Grasso Enterprises*, the Eleventh Circuit stated that "the exhaustion requirement for ERISA claims should not be excused for technical violations of ERISA regulations that do not deny plaintiffs meaningful access to an administrative remedy procedure through which they may receive an adequate remedy."[67] The court further explained that:

> [I]t makes little sense to excuse plaintiffs from the exhaustion requirement where an employer is technically noncompliant with ERISA's procedural requirements but, as the district court determined in this case, the plaintiffs still had a fair and reasonable opportunity to pursue a claim through an administrative scheme prior to filing suit in federal court … Therefore, if a reasonable administrative scheme is available to a plaintiff and offers the potential for an adequate legal remedy, then a plaintiff must first exhaust the administrative scheme before filing a federal suit.[68]

As stated in *Perrino*, requiring exhaustion under these circumstances "conforms with the logic of our exhaustion doctrine in which we apply the exhaustion requirement strictly and recognize narrow exceptions only based on exceptional circumstances." The law of this Circuit is the same, excusing exhaustion "only when pursuing an administrative remedy would be futile or there

---

[65] *Id*. at 1316.
[66] *Id*. at 1316-17.
[67] *Id*. at 1317.
[68] *Id*. at 1318.

Appellate Case: 22-1093     Page: 39     Date Filed: 02/17/2022 Entry ID: 5128506

is no administrative remedy to pursue."[69] Because none of the recognized

exceptions to exhaustion apply to this claim, the district court erred by excusing it.

### D. The district court's remedy is improper under *Brown v. JB Hunt*

Based on the prior arguments, the district court's decision that exhaustion

was either excused or the claim was deemed denied should be reversed. But the

district court committed another error when it awarded benefits to Ms. Yates

instead of remanding the claim for her to exhaust her remedies. As recognized in

*Brown*, "[t]he appropriate remedy for [a] violation § 1133(2) is not an award of

benefits."[70] Instead, the proper remedy is to remand the claim to the plan to reopen

the record and conduct a "full and fair review."[71] A remand furthers ERISA's

purposes by allowing a reviewing court to consider the plan's final decision based

on a complete record rather than an initial denial.[72]

## IV. The District Court Erred By Refusing to Apply the Policy Exclusion for "Intentionally Self-Inflicted Injury"

Again, the Court should not need to reach the question of whether benefits

are payable under the terms of the policy based on Ms. Yates' failure to exhaust.

But should this Court nevertheless review the eligibility decision, for a number of

reasons, the district court's conclusion is erroneous and should be reversed. The

---

[69] *Angevine,* 646 F.3d at 1037.
[70] *Brown*, 586 F.3d at 1087.
[71] *Id*. at 1087-88.
[72] *Galman*, 254 F.3d at 770-71.

30

district court concluded that Mr. Yates' death from a heroin overdose was accidental and that the exclusion for intentionally self-inflicted injury did not apply. App. 216; R. Doc. 62 at 23. Courts have wrestled with the question of what qualifies as an "accident" for about as long as there have been accidental death insurance policies. Rather than enter into that fray, Symetra will focus on the district court's erroneous conclusions regarding the exclusion.

A.    <u>Mr. Yates' heroin overdose was intentionally self-inflicted</u>

The Symetra policy states under the heading "Exclusions" that it "will not pay for any loss caused wholly or partly, directly or indirectly, by … intentionally self-inflicted injury." App. 131; R. Doc. 42-1 at 20. Mr. Yates was known to use heroin and there is no evidence that the drug was administered by anyone else. App. 142-143; R. Doc. 42-2 at 2-3. Under these facts and the plain language in the policy, the loss was both intentional and self-inflicted. Therefore, the exclusion applies.

The word "intentionally" is defined as "purposely"[73] or "in a planned way."[74] These words describe Mr. Yates' use of heroin. Again, he was a "reported heroin user." App. 142; R. Doc. 42-2 at 2. When his body was found, the needle was still in his arm and drug paraphernalia was nearby. App. 143; R. Doc. 42-2 at

---

[73] https://www.merriam-webster.com/dictionary/intentionally
[74] https://dictionary.cambridge.org/us/dictionary/english/intentionally

Appellate Case: 22-1093    Page: 41    Date Filed: 02/17/2022 Entry ID: 5128506

3. The heroin did not enter Mr. Yates' body by chance. He purposely/intentionally injected it.

Next, a self-inflicted injury "is one that you cause yourself."[75] Again, there is no suggestion that anyone other than Mr. Yates injected the heroin into his body. Therefore, the term is satisfied. This leaves whether the death was an "injury." This term is defined as "damage done to a person's … body."[76] Mr. Yates died as a result of his heroin use. There is no greater injury a person can sustain than the loss of life. Therefore, all of the requirements for the exclusion to apply are satisfied.

The fact that Mr. Yates may not have intended to die from his heroin use does not matter. In *Sigler v. Mutual Ben. Life Ins. Co*., the insured died as a result of autoerotic asphyxiation.[77] Like this case, there was no evidence that the death was the result of suicide or "foul play."[78] Applying that policy's exclusion for "intentionally, self-inflicted injury," the district court recognized that while Mr. Sigler did not intend to lose consciousness and die, he voluntarily restricted his air supply. "Therefore, the elements of 'intentionally, self-inflicted' are satisfied."[79]

---

[75] https://www.macmillandictionary.com/us/dictionary/american/self-inflicted
[76] https://www.collinsdictionary.com/us/dictionary/english/injury
[77] 506 F. Supp. 542 (S.D. Iowa 1981).
[78] *Id*. at 543.
[79] *Id*. at 545.

Appellate Case: 22-1093    Page: 42    Date Filed: 02/17/2022 Entry ID: 5128506

As to whether the Mr. Sigler sustained an "injury," "it continues to be an injury even when it is self inflicted."[80]

After "carefully consider[ing] the briefs, arguments, and record," the Eighth Circuit affirmed "the district court's well-reasoned opinion" in *Sigler*.[81] While the cause of death in *Sigler* and this case are different, the analysis is the same and leads to the same conclusion. Although Mr. Yates did not intend to overdose, he "voluntarily" took heroin that caused an injury. Therefore, the exclusion applies.

In several decisions, courts have concluded that a death from overdose is a "self-inflicted injury" that is excluded from accidental death coverage. In *McLain v. Metropolitan Life Ins. Co.*, the insured died from an overdose of cocaine and the defendant denied the claim under a self-inflicted injury exclusion.[82] The court first recognized that "it is not necessary to find that he intended to kill himself."[83] "[A]lthough he had ingested cocaine in the past, apparently without serious injury, it is inconceivable that anyone, particularly a long time cocaine user, would be unaware of the dangers inherent to the use of cocaine."[84]

Here, Mr. Yates was fifty years of age and a known heroin user. App. 142; R. Doc. 42-2 at 2. The investigating officer found bruising on the inside of Mr.

---

[80] *Id.*
[81] 663 F.3d 49, 50 (8th Cir. 1981).
[82] 820 F. Supp. 169 (D.N.J. 1993).
[83] *Id.* at 179.
[84] *Id.*

33

Yates' forearms and on his abdomen that were believed to be injection sites. App. 143; R. Doc. 42-2 at 3. Like the decedent in *McLain*, "it is inconceivable that [Mr. Yates] would be unaware of the dangers inherent to the use of [heroin]."[85] Therefore, as in *McLain*, the exclusion applies to the overdose death.[86]

In support of its conclusion in *McLain*, the court cited to *Holsinger v. New England Mutual Life Ins. Co.*[87] In *Holsinger*, the insured also died from a drug overdose and the claim was denied based on the same exclusion used in this case. The court stated that there was "no dispute that the insured intentionally ingested the drugs."[88] It was also clear that as a long time drug user, the decedent knew that the drugs could cause injury "depressing the bodily functions."[89] Therefore, it was "irrelevant that decedent may have believed that due to his tolerance to drugs, he would not die from the ingestion of the drugs."[90] Because the drugs caused the injury that contributed to the death, the court applied the exclusion to the claim.

Accidental death benefits from an overdose were also denied in *Gerdes v. John Hancock Mut. Life Ins. Co.*[91] The insured died from opiate and cocaine

---

[85] *Id*.

[86] *Id.* at n.10. While review in *McLain* was under the arbitrary and capricious standard, the court stated that "[e]ven under a *de novo* review, MetLife's denial of eligibility for Accidental Death and Dismemberment benefits was appropriate."

[87] 765 F. Supp. 1279 (E.D.Mich.1991).

[88] *Id*. at 1282.

[89] *Id*. The decedent was also a pharmacist.

[90] *Id*.

[91] 199 F. Supp. 2d 861 (C.D. Ill. 2001).

Appellate Case: 22-1093    Page: 44    Date Filed: 02/17/2022 Entry ID: 5128506

intoxication and the claim was denied based on the exclusion for "intentionally, self-inflicted injuries." As in the cases cited above, the court stated that "it is not determinative that the plaintiff did not mean to commit suicide; but rather a reasonable person would have known that taking the drug could cause injury."[92]

Addressing the policy exclusion in *Gerdes*, the court stated:

> [W]ith the widespread dissemination of drug information and the high general public perception of the danger of using drugs such as heroin and cocaine, Plaintiffs cannot reasonably assert that Faust did not know that his ingestion of heroin, cocaine, and ethanol could cause serious injury and possible death. Faust had to be aware of the risk involved and assumed that risk. Unfortunately and tragically, this was a risk he was willing to take and he paid with his life.[93]

The decedent's "voluntary participation in such dangerous action leaves no doubt that the resulting injuries are 'intentionally self-inflicted.' Therefore, the exclusion applies. There is no recovery under the policy."[94]

In the more than twenty years since *Gerdes* was decided, the number of drug overdose deaths has quadrupled.[95] The ongoing heroin epidemic has brought to focus the fact that heroin sold today is more potent and lethal than ever before.[96] It is impossible to believe that Mr. Yates, a longtime drug user like McLain,

---

[92] *Id*. at 865.
[93] *Id*. at 866.
[94] *Id*.
[95] https://www.cdc.gov/opioids/basics/epidemic.html
[96] https://www.govinfo.gov/content/pkg/CHRG-114hhrg95685/html/CHRG-114hhrg95685.htm

Appellate Case: 22-1093   Page: 45   Date Filed: 02/17/2022 Entry ID: 5128506

Holsinger and Gerdes was unaware of the risk taking of using heroin. This generalized knowledge is all that is required for the exclusion to apply. The district court should have upheld the denial of the claim under the exclusion.

### B. The district court's mistaken analysis of the exclusion

In rejecting the application of the exclusion to this claim, the district court cited to this Court's decision in *King v. Hartford Life Ins. Co*.[97] But the district court failed to account for both the different facts and policy language between the cases. In *King*, the insured did not die from an overdose or even directly from his intoxication.[98]

The insured in *King* died after his motorcycle veered off the road and struck a fence, causing fatal head injuries.[99] His blood alcohol level was 0.19. But the real issue in *King* was the insurer's interpretation of "accidental," not the exclusion for intentionally self-inflicted injuries. The Eighth Circuit concluded that the plan applied an incorrect standard for the term "accident" when it denied the claim.[100] Hartford then claimed that the death was excluded from coverage under the exclusion for intentionally self-inflicted injury. But this basis was not stated when the claim was denied. Therefore, it was rejected as a *post hoc* rationale.[101]

---

[97] 414 F.3d 994 (8th Cir. 2005).
[98] *Id*. at 997.
[99] *Id*.
[100] *Id*. at 1003-04.
[101] *Id*. at 1004.

Appellate Case: 22-1093      Page: 46      Date Filed: 02/17/2022 Entry ID: 5128506

In addition to being a *post hoc* rationale, the Court also disagreed with Hartford's reading of the exclusion for intentionally self-inflicted injuries. While recognizing that, standing alone, the defendant's interpretation might be reasonable, "it is not reasonable in the context of this policy, because it renders meaningless other important policy language."[102] The Court explained that "[i]f the exclusion for 'intentionally self-inflicted injury' eliminated coverage for unintended injuries caused or contributed to by intentionally ingesting substances into the body, then there would be no reason for the seventh exclusion regarding the taking of drugs and narcotics."

Unlike the Hartford policy in *King*, the Symetra policy does not include a separate drug exclusion. App. 219; R. Doc. 62 at 26 n.15. Therefore, there is no other exclusion rendered meaningless as in *King*. Since the intentionally self-inflicted injury exclusion is "standing alone" here, Symetra's interpretation should be considered "reasonable" and it precludes the district court's award of benefits.[103]

There is also a significant factual distinction between this case and *King*. As this Court explained, "Schanus's alcohol intoxication was not a *fatal* self-inflicted injury."[104] It was "the head injury – not the drinking – [that] was fatal" to

---

[102] *Id*.

[103] *Id*.

[104] *Id*. at 1005.

Appellate Case: 22-1093     Page: 47     Date Filed: 02/17/2022 Entry ID: 5128506

the insured.[105] But here, the voluntary taking of heroin was not a "cause of a cause" as in *King*. It led directly to Mr. Yates' death. Contrary to the district court's reliance on *King*, the Court's actual holdings support the application of the exclusion to the facts of this case.

The district court also cited to this Court's decision in *Nichols v. UniCare Life and Health Ins. Co*., as not allowing the application of the exclusion to this claim.[106] App. 221; R. Doc. 62 at 28. But in doing so, the court again overlooked the basis for this Court's decision. The insured in *Nichols* died from "mixed drug intoxication."[107] The insurer denied the claim in part based on the policy's "legally intoxicated" exclusion.[108] The Court concluded that a reasonable person would understand the exclusion to apply to offenses such as drunk driving and public intoxication.[109] Symetra's denial is based on the "intentionally, self-inflicted injury" exclusion which was not even addressed in *Nichols*.

The district court also cited to *Sheehan v. Guardian Life Ins. Co*., as supporting its conclusion.[110] But there was evidence in that case that the insured did not knowingly consume the morphine. The decedent told his wife that an

---

[105] *Id*.
[106] 739 F.3d 1176 (8th Cir. 2104).
[107] *Id*. at 1179.
[108] *Id*. at 1184.
[109] *Id*.
[110] 372 F.3d 962 (8th Cir. 2004).

Appellate Case: 22-1093    Page: 48    Date Filed: 02/17/2022 Entry ID: 5128506

acquaintance gave him an ALEVE bottle with pills inside to relieve his neck pain. Based on this evidence, the Court rejected the insurer's "attempts to paint Mr. Sheehan as a drug abuser who knew that he was taking morphine."[111] But we know that Mr. Yates intended to inject heroin as he had done many times before. App. 142-143; R. Doc. 42-2 at 2-3. And like *Nichols*, the denial in *Sheehan* did not involve an exclusion for intentionally, self-inflicted injuries, which was the exclusion relied on in this case.[112]

Symetra sustained its burden that the exclusion applies to the claim for benefits. In reaching the opposite conclusion, the district court relied on cases involving very different facts and addressing different policy exclusions. Therefore, the judgment should be reversed.

## VI. CONCLUSION

The basis for the district court's excusal of Ms. Yates' failure to exhaust has not been recognized by this Court. Moreover, it is contrary to this Court's decisions which state that a claimant with notice of a plan's appeal procedures from the denial letter must follow them. The district court's erroneous decision should be vacated and judgment entered in favor or Symetra.

---

[111] *Id*. at 967.

[112] *Id*.

Appellate Case: 22-1093    Page: 49    Date Filed: 02/17/2022 Entry ID: 5128506

Respectfully submitted,

DANIEL E. TRANEN
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER
7751 Carondelet Avenue, Suite 203
Clayton, MO 63105
(618) 307-0200

JOSHUA BACHRACH
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER
2001 Market Street
Two Commerce Square, Suite 3100
Philadelphia, PA 19103
(215) 606-3906
joshua.bachrach@wilsonelser.com

*Counsel for Defendant-Appellant*

40

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,934 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14-point Times New Roman.

/s/ Joshua Bachrach
Joshua Bachrach

41

Appellate Case: 22-1093    Page: 51    Date Filed: 02/17/2022 Entry ID: 5128506

## VIRUS CHECK CERTIFICATION

The electronic version of the brief and addendum have been scanned for viruses and are virus-free.

/s/ Joshua Bachrach
Joshua Bachrach

Appellate Case: 22-1093      Page: 52      Date Filed: 02/17/2022 Entry ID: 5128506

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of February, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Joshua Bachrach
Joshua Bachrach

Appellate Case: 22-1093   Page: 53   Date Filed: 02/17/2022 Entry ID: 5128506