No. 22-1093

---

In the United States Court of Appeals

For the Eighth Circuit

_____

Terri M. Yates

Plaintiff-Appellee

V.

SYMETRA LIFE INSURANCE COMPANY

Defendant-Appellant

On Appeal from the United States District Court for the
Eastern District of Missouri, No. 4:19-cv-00154-RLW
District Court Judge Ronnie L. White

---

**APPELLEE'S ANSWERING BRIEF**

---

Glenn R. Kantor, Esq.
Sally Mermelstein, Esq.
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
(818) 886-2525

Attorneys for Plaintiff-Appellee

## SUMMARY OF THE CASE
## AND REQUEST FOR ORAL ARGUMENT

This case implicates important issues of ERISA, including whether the judicially created doctrine of exhaustion of administrative remedies applies where an ERISA plan does not formally create any administrative remedies, and whether the absence of the administrative remedy is itself an ERISA violation that permits a claimant to proceed to court under ERISA's "deemed exhausted" regulation. This case also concerns the application of the common-law rules of construction of an ERISA plan as applied to the "intentionally self-inflicted injury" exclusion in an accidental death and dismemberment policy. The resolution of these issues will affect many ERISA plan participants, so Plaintiff-Appellee requests oral argument of 20 minutes to resolve any questions that may arise for the panel.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE
AND REQUEST FOR ORAL ARGUMENT ...................................................... i

I. INTRODUCTION ................................................................1

II. STATEMENT OF THE CASE ................................................................2

    A. The Plan/policy ................................................................ 2

    B. Procedural Facts/Administrative Process .................................................. 4

    C. Procedural Facts/Litigation ........................................................ 4

    D. Facts Related to Merits ........................................................ 6

III. SUMMARY OF ARGUMENT ................................................................8

IV. ARGUMENT ................................................................9

    A. The District Court was Correct that Exhaustion is not
       Enforceable Where the Formal Plan Documents Do Not
       Include a Review Procedure to Exhaust .................................................. 9

        1. This Court Has Never Enforced an Appeal Process
           Expressed Only in a Benefits Denial Letter ................................10

        2. *Anderson* Should Govern the Resolution of this Case ................14

        3. Common Law Doctrines Do Not Make Way for an
           ERISA Claims Administrator or a Court to Impose
           Extra-Contractual Terms ...........................................................19

Appellate Case: 22-1093    Page: 3    Date Filed: 05/10/2022   Entry ID: 5155888

4. The District Court's Ruling Comports with The Supreme Court's Staunch Insistence on the Superiority of ERISA Plan Terms ....................................................23

5. No Purpose of Exhaustion Would Have Been Served By Requiring it Under The Circumstances of This Case.................26

B. The District Court was Correct that Yates' Claim was Deemed Exhausted................................................................ 30

C. Substantial Compliance Does Not Apply Where There is No Compliance with the Requirement to Have a Written Appeal Procedure ........................................................................... 35

D. Mr. Yates' Death was Not an "Intentionally Self-Inflicted Injury"..................................................................................... 37

1. Symetra's Construction Conflicts with the Exclusion's Plain Language ................................................................38

2. Symetra's Construction of the Intentionally Self-Inflicted Injury Exclusion Impermissibly Swallows the Coverage ..........41

3. Symetra's Construction Cannot Be Reconciled with the Policy's DUI Exclusion .........................................46

4. Symetra Did Not Meet its Burden to Prove the Applicability of the Properly Interpreted Exclusion ..................48

V. CONCLUSION ........................................................................49

CERTIFICATE OF COMPLIANCE....................................................50

VIRUS CHECK CERTIFICATION......................................................51

CERTIFICATE OF SERVICE .............................................................52

Appellate Case: 22-1093     Page: 4     Date Filed: 05/10/2022 Entry ID: 5155888

# TABLE OF AUTHORITIES

## Cases

*Adams v. Cont'l Cas. Co.,*
  364 F.3d 952 (8th Cir. 2004) ..............................................................38

*Admin. Comm. of Wal-Mart Stores, Inc. Associates' Health*
  *& Welfare Plan v. Shank,*
  500 F.3d 834 (8th Cir. 2007) ....................................................... 19, 26

*Am. Bankers Ins. Co. of Fla. v. Gilberts,*
  181 F.3d 931 (8th Cir. 1999) ....................................................... 44-45

*Anderson v. Alpha Portland Indus., Inc.,*
  752 F.2d 1293 (8th Cir. 1985) ..................................................... 12, 15

*Anderson v. Alpha Portland Industries, Inc.,*
  727 F.2d 177 (8th Cir. 1984) ................................................. 15-16, 37

*Anderson v. Resol. Tr. Corp.,*
  66 F.3d 956 (8th Cir. 1995) ..............................................................20

*Angevine v. Anheuser-Busch Companies Pension Plan,*
  646 F.3d 1034 (8th Cir. 2011) ..................................................... 14, 16

*Back v. Danka Corp.,*
  335 F.3d 790 (8th Cir. 2003) ....................................................... 14, 28

*Bond v. Cerner Corp.,*
  309 F.3d 1064 (8th Cir. 2002) ..........................................................37

*Brown v. J.B. Hunt Transp. Servs., Inc.,*
  586 F.3d 1079 (8th Cir. 2009) ..........................................................29

*Brown v. J.B. Hunt Transp. Servs., Inc.,*
  2008 WL 4079822 (E.D. Ark. Aug. 28, 2008)....................................29

*Burds v. Union Pac. Corp.,*
  223 F.3d 814 (8th Cir. 2000) ................................................... 13-14, 28

iv

*Card v. Principal Life Ins. Co.,*
    17 F.4th 620 (6th Cir. 2021) ...............................................................30

*Chorosevic v. MetLife Choices,*
    600 F.3d 934 ,(8th Cir. 2010) ............................................................14

*CIGNA Corp. v. Amara,*
    563 U.S. 421 (2011) ............................................................ 22, 24, 33

*Conley v. Pitney Bowes,*
    34 F.3d 714 (8th Cir. 1994) ..................................................... passim

*Cooper v. Metro. Life Ins. Co.,*
    862 F.3d 654 (8th Cir. 2017) ............................................................36

*Curtiss-Wright Corp. v. Schoonejongen,*
    514 U.S. 73 (1995) ............................................... 12, 17, 23-24

*Davidson v. Prudential Ins. Co. of Am.,*
    953 F.2d 1093 (8th Cir. 1992) ..........................................................29

*Dozier v. Sun Life Assur. Co. of Canada,*
    466 F.3d 532 (6th Cir. 2006) ..................................................... 26, 29

*DuMond v. Centex Corp.,*
    172 F.3d 618 (8th Cir. 1999) ............................................................36

*Eastman Kodak Co. v. STWB, Inc.,*
    452 F.3d 215 (2d Cir. 2006) ................................................. 18, 32-33, 37

*Edwards v. Bus. Men's Assur. Co. of Am.,*
    168 S.W.2d 82 (1942) ......................................................................40

*Firestone Tire & Rubber Co. v. Bruch,*
    489 U.S. 101 (1989) .........................................................................24

*First Union Nat. Bank v. Pictet Overseas Tr. Corp.,*
    477 F.3d 616 (8th Cir. 2007) ..................................................... 41-42

v

*Grasso Enterprises, LLC v. Express Scripts, Inc.,*
    809 F.3d 1033 (8th Cir. 2016) .................................................................. 30, 35-36

*Grosz-Salomon v. Paul Revere Life Ins. Co.,*
    237 F.3d 1154 (9th Cir. 2001) ..................................................................... 21

*Heimeshoff v. Hartford Life & Acc. Ins. Co.,*
    571 U.S. 99 (2013) ......................................................................................... 25

*Holmes v. Colorado Coal. for Homeless Long Term Disability Plan,*
    762 F.3d 1195 (10th Cir. 2014) .................................................................. 16-17

*Jensen v. SIPCO, Inc.,*
    38 F.3d 945 (8th Cir. 1994) ......................................................................... 35

*Jessen v. Cigna Group Ins.,*
    812 F.Supp.3d 805 (E.D. Mich.) ................................................................ 45

*Jobe v. Med. Life Ins. Co.,*
    598 F.3d 478 (8th Cir. 2010) ....................................................................... 21

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan,*
    555 U.S. 285 (2009) ..................................................................................... 23

*King v. Hartford Life & Acc. Ins. Co.,*
    414 F.3d 994 (8th Cir. 2005) ................................................................ passim

*Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan,*
    111 F.3d 67 (8th Cir. 1997) .................................................................. 10-12, 26

*Kovach v. Zurich Am. Ins. Co.,*
    587 F.3d 323 (6th Cir. 2009) .................................................................. 28, 39, 47

*Makar v. Health Care Corp. of Mid-Atl. (CareFirst),*
    872 F.2d 80 (4th Cir. 1989) ........................................................................ 28-29

*McClelland v. Life Ins. Co. of N. Am.,*
    679 F.3d 755 (8th Cir. 2012) ....................................................................... 42

Appellate Case: 22-1093   Page: 7   Date Filed: 05/10/2022   Entry ID: 5155888

*McKeehan v. Cigna Life Ins. Co.,*
    344 F.3d 789 (8th Cir. 2003) ..................................................................27

*Metro. Life Ins. Co. v. Glenn,*
    554 U.S. 105 (2008) ..............................................................................22

*Metro. Life Ins. Co. v. Price,*
    501 F.3d 271 (3d Cir. 2007) .......................................................... 26, 29

*Moore v. Metro. Life Ins. Co.,*
    856 F.2d 488 (2d Cir. 1988) ................................................................20

*Morgan v. Mullins,*
    643 F.2d 1320 (8th Cir. 1981) ............................................................34

*Nichols v. Unicare Life & Health Ins. Co.,*
    739 F.3d 1176 (8th Cir. 2014) .................................................... passim

*Padfield v. AIG Life Ins. Co.,*
    290 F.3d 1121 (9th Cir. 2002) .............................................. 44-45, 49

*Paese v. Hartford Life & Acc. Ins. Co.,*
    449 F.3d 435 (2d Cir. 2006) ................................................................26

*Perrino v. S. Bell Tel. & Tel. Co.,*
    209 F.3d 1309 ............................................................................... 36-37

*Ringwald v. Prudential Ins. Co. of Am.,*
    609 F.3d 946 (8th Cir. 2010) ..............................................................22

*Rosen v. Provident Life & Acc. Ins. Co.,*
    2015 WL 260839 (N.D. Ala. Jan. 21, 2015) .......................................5

*Santaella v. Metro. Life Ins. Co.,*
    123 F.3d 456 (7th Cir. 1997) ........................................... 28, 39, 44-45

*Schneider Moving & Storage Co. v. Robbins,*
    466 U.S. 364 (1984) ..............................................................................15

Appellate Case: 22-1093    Page: 8    Date Filed: 05/10/2022 Entry ID: 5155888

*Schorsch v. Reliance Standard Life Ins. Co.,*
   693 F.3d 734 (7th Cir. 2012) ...............................................................16

*Sheehan v. Guardian Life Ins. Co.,*
   372 F.3d 962 (8th Cir. 2004) ................................................................43

*Sigler v. Mut. Ben. Life Ins. Co.,*
   506 F. Supp. 542 (S.D. Iowa) ........................................................ 44-45

*Slice v. Sons of Norway,*
   34 F.3d 630 (8th Cir. 1994) .................................................................20

*Spizman v. BCBSM, Inc.,*
   855 F.3d 924 (8th Cir. 2017) ...............................................................38

*Theriot v. Bldg. Trades United Pension Tr. Fund,*
   850 F. App'x 231 (5th Cir. 2021) .........................................................21

*United Paperworkers Int'l Union, AFL-CIO, CLC v.*
   *Jefferson Smurfit Corp.,*
   961 F.2d 1384 (8th Cir. 1992) ........................................................ 20-21

*UNUM Life Ins. Co. of Am. v. Ward,*
   526 U.S. 358 (1999) .............................................................................24

*US Airways, Inc. v. McCutchen,*
   569 U.S. 88 (2013) ...............................................................................24

*Varity Corp. v. Howe,*
   516 U.S. 489 (1996) .............................................................................17

*Vercellino v. Optum Insight, Inc.,*
   26 F.4th 464 (8th Cir. 2022)................................................................19

*Wallace v. Oakwood Healthcare, Inc.,*
   954 F.3d 879 (6th Cir. 2020) .................................................................9

*Warmbrodt v. Reliance Standard Life Ins. Co.,*
   2021 WL 2142433 (E.D. Mo. May 26, 2021).....................................13

Appellate Case: 22-1093    Page: 9    Date Filed: 05/10/2022 Entry ID: 5155888

*Welsh v. Burlington N., Inc., Emp. Benefits Plan,*
    54 F.3d 1331 (8th Cir. 1995) ...............................................................28

*Wert v. Liberty Life Assur. Co. of Bos.,*
    447 F.3d 1060 (8th Cir. 2006) ........................................ 10, 12-13, 26

*Wickman v. Nw. Nat. Ins. Co.,*
    908 F.2d 1077 (1st Cir. 1990) ................................................. passim

*Willcox v. Liberty Life Assurance Co. of Boston,*
    552 F.3d 693 (8th Cir.2009) ...............................................................28

*Wilson v. Moog Auto., Inc. Pension Plan & Tr. for U.A.W. Emps.,*
    193 F.3d 1004 (8th Cir. 1999) ...........................................................36

*Wilson v. Prudential Ins. Co. of Am.,*
    97 F.3d 1010 (8th Cir. 1996) .............................................................37

**Statutes**

9 U.S.C.A. § 2 ...........................................................................................16

29 U.S.C. § 1022(a) ................................................................. 18, 32, 38

29 U.S.C. § 1132(a)(1)(B) .............................................................. 23, 25

29 U.S.C. § 1102 ......................................................................................33

29 U.S.C. § 1102(a)(1) ............................................................................ 31

29 U.S.C. § 1102(b)(3) ............................................................................31

29 U.S.C. § 1113 ......................................................................................25

29 U.S.C. § 1133 ......................................................................................31

29 U.S.C.A. § 1001 ..................................................................................22

29 U.S.C.A. § 1022(b) .............................................................................31

Appellate Case: 22-1093    Page: 10    Date Filed: 05/10/2022 Entry ID: 5155888

29 U.S.C. § 1024(b)(1)(A) ............................................................................................ 18

29 U.S.C. § 1024(b)(1)(B) ............................................................................................ 18

29 U.S.C.A. § 1024(b)(2) ....................................................................................... 32, 36

29 U.S.C.A. § 1024(b)(4) ............................................................................................ 32

29 U.S.C.A. § 1104(a)(1)(D) ....................................................................................... 23

**Regulations**

29 C.F.R. § 2520.102-2 ................................................................................................ 32

29 C.F.R. § 2520.102-3(s) ........................................................................................... 32

29 C.F.R. § 2520.503-1(l) ............................................................................................ 33

29 C.F.R. § 2560.503-1(g)(1)(iii) .................................................................................. 4

29 C.F.R. § 2560.503–1(g)(1)(iv) ................................................................................ 31

29 C.F.R. § 2560.503-1(l)(1) ....................................................................................... 30

Appellate Case: 22-1093     Page: 11     Date Filed: 05/10/2022 Entry ID: 5155888

# I.     INTRODUCTION

When Mr. Yates died after injecting heroin one night in December 2016, Symetra refused to pay his spouse, Ms. Yates,[1] $50,000 under her ERISA-governed accidental death and dismemberment policy. Though Symetra concedes that Mr. Yates died accidentally, it maintains: 1) that Yates failed to exhaust her pre-litigation remedies; and 2) that the death, though an accident, was nevertheless excluded from coverage as an "intentionally self-inflicted injury." The District Court rejected both of these arguments, granting Yates summary judgment. It held that Yates did not fail to exhaust because the plan documents were devoid of any appeal procedure. In other words, neither Symetra nor a court could impose an obligation on Yates that was not imposed by the plan terms, themselves. Then, interpreting the exclusion, the District Court held that Symetra had failed to provide any evidence that Mr. Yates *intended* to harm himself.

In this appeal Symetra proposes two ways it would like this Court to rewrite the applicable ERISA plan to make its refusal to pay the benefits legal.

First Symetra would like this Court to retroactively insert an appeal process into the plan, where none existed, and rule that because Yates failed to exhaust it, her claim should have been dismissed.

---

[1] Hereinafter, Ms. Yates, the plaintiff-appellee, will be referred to as "Yates," while the decedent will be referred to as "Mr. Yates."

Appellate Case: 22-1093     Page: 12     Date Filed: 05/10/2022 Entry ID: 5155888

Barring this Court's willingness to impose this extra-plan appeal procedure against Yates, it would like this Court to read an exclusion into the plan that would remove from coverage any potentially risky voluntary act that leads to loss. It would like this Court to do so despite that intentionally undertaken risky acts accidentally resulting in death or injury are the acts that accidental death and dismemberment insurance covers.

Clearly, this Court cannot acquiesce in either of Symetra's demands without running afoul of the Supreme Court's and this Court's long-standing adherence to ERISA plan terms, above all else, as the ultimate source of rights and obligations under ERISA plans.

## II.    STATEMENT OF THE CASE

### A.    The Plan/policy

The record includes a group policy and a certificate of insurance, which constitute the only ERISA plan documents in this case. App. 17-41; R. Doc. 1-2 at 1-25; App. 113-140; R. Doc. 42-1 at 2-29; *See* App. 197 (finding that these documents "constitute the plan documents, as these are the only documents in the record that could be considered plan documents, and Symetra has not provided any other documents that it contends are plan documents.") The policy dates to 1981 when Symetra was known as Safeco. ("Safeco policy"). App. 17-18, R. Doc. 1-2 at

2

1-2. The certificate, relied upon in Symetra's Statement of Uncontroverted Material Facts In Support of Defendant's Motion for Summary Judgment ("Symetra Certificate"), became effective in 2016. App. 117; R. Doc. 42-1 at 2. Neither document includes an appeal procedure or any reference to ERISA.

The Symetra Certificate underwent at least nine amendments, including "Amendment #9, Effective August 28, 2007." App. 131; R. Doc. 42-1 at 20. During those nine years, despite the opportunity to do so, the plan was never amended to include an appeal procedure.

The Safeco Policy included a list of "Exclusions" to coverage, which includes the exclusion that Symetra argues applies here:

> SAFECO will not pay for any loss caused wholly or partly, directly or indirectly, by:
> . . .
>
> (d) intentionally self-inflicted injury, while sane

App. 29; R. Doc. 1-2 at 13. The Symetra Certificate also includes the "intentionally self-inflicted injury" exclusion. App. 131; R. Doc. 42-1 at 20.

However, the Symetra Certificate was amended to add an exclusion pertaining to driving while under the influence of alcohol or un-prescribed drugs ("DUI Exclusion"):

Appellate Case: 22-1093    Page: 14    Date Filed: 05/10/2022 Entry ID: 5155888

This benefit does not cover accidental loss if you were operating the automobile while legally intoxicated as defined by the laws of the state in which the accident occurred, or under the influence of any excitant, hallucinogen, narcotic, other drug or similar substance, unless administered under the advice of a physician.

App. 131; R. Doc. 42-1 at 20.

## B. Procedural Facts/Administrative Process

Symetra states that its denial letter to Yates "explained to Ms. Yates her appeal rights under ERISA." Opening Brief at 14. This is not an accurate statement. Although there was a paragraph inviting Yates to submit an appeal, it was not clear that this paragraph amounted to "appeal rights under ERISA." App. 150; R. Doc. 42-4 at 3. The letter did not include ERISA-mandated requirements; it did not advise Yates how to perfect her claim, what evidence she should submit and why that evidence was necessary. *Id.;* 29 C.F.R. § 2560.503-1(g)(1)(iii). In addition, the letter was equivocal as to whether ERISA applied at all. It advised, "If the Employee Retirement Income Security Act of 1974 does not apply to your policyholder's plan, you have the right to file a civil action in accordance with the regulations of your state." App. 151; R. Doc. 42-2 at 4.

## C. Procedural Facts/Litigation

Considering the letter's unclarity about whether the benefits were ERISA-governed and the fact that the Safeco Policy did not mention ERISA or include any appeal procedures, it is no surprise that Yates originally brought her claim in state

Appellate Case: 22-1093    Page: 15    Date Filed: 05/10/2022 Entry ID: 5155888

court for breach of contract. App. 12-16; R. Doc. 1-1 at 1-5. Although it did not have

such certainty until litigation, Symetra removed the case to federal court, asserting

clearly for the first time that ERISA applied after all. App. 1; R. Doc. 1 at 1-3. Having

obtained the benefit of ERISA, it then immediately sought dismissal based on Yates'

failure to exhaust a procedure that did not exist in any formal document and was

only mentioned in a letter that, itself, left the question open as to whether ERISA

applied.[2] App. 46-47; R. Doc. 5 at 1-3.

In the District Court, Symetra, argued that it was 1) entitled to summary

judgment because Mr. Yates' death fell under the "intentionally self-inflicted injury"

and 2) Yates' claim should be dismissed because of her failure to exhaust

administrative remedies. Appellee's App. 8-15; R. Doc 41 at 8-15. However, it

abandoned its earlier rationale that Mr. Yates' death was not an accident. Appellee's

App. 5-15; R. Doc. 41 at 5-15; App. 209.

Yates opposed the motion on both fronts. Appellee's App. 18-29; R. Doc. 47

at 2-13. Yates attached additional information, not previously included in Symetra's

---

[2] *Rosen v. Provident Life & Acc. Ins. Co.,* No. 2:14-CV-0922-WMA, 2015 WL 260839, at *6 (N.D. Ala. Jan. 21, 2015)(predicting this exact maneuver of asserting exhaustion after arguing for ERISA preemption, "Provident does not deny that it never mentioned ERISA to Rosen until Rosen had gone to court without first attempting to exhaust the administrative remedies mandated by ERISA. If super-duper-preemption forces Rosen to pursue the limited ERISA remedy, the first defense Provident would likely interpose is his failure to exhaust.")

5

administrative record to her Response to Statement of Material Facts. App. 152-160; R. Doc 46 at 1-9; Appellee's App. 30; R. Doc. 47 at 14. The exhibits included: an email from the coroner explaining that an actual coroner had not investigated Mr. Yates' death as he had delegated this duty to the sheriff; the results of a criminal background check showing that Mr. Yates had a single violation for failing to use his seatbelt in 2012, and; plaintiff's affidavit explaining that suppositions made by the investigating officer about Mr. Yates' history were incorrect. App. 161-165; R. Doc. 46-1; R. Doc. 46-2; R. Doc. 46-3 at 1-3. Symetra, in its reply to Yates' opposition, argued that the additional documents should not be included in the record reviewed by the District Court as a matter of ERISA. Appellees App. 33-36; R. Doc. 49 at 1-4.

In both its original ruling in favor of Symetra, and its Rule 59(e) reversal of this ruling in favor of Yates, the District Court rejected Yates' attempts to augment the record as lacking in good cause and not necessary to conduct an adequate *de novo* review of the merits of Yates' claim. App. 168-169; R. Doc. 54 at 3-4; App. 203-204; R. Doc. 62 at 10-11.

### D. Facts Related to Merits

Although this case will likely be decided as a matter of law, even considering Symetra's misstatements of facts, for the purpose of clarification, the following facts asserted by Symetra in its Opening Brief find no basis in the record:

- Relying on its own "Statement of Uncontroverted Material Facts," Symetra states: "the investigating officer found a needle in his arm and drug paraphernalia on the nightstand." Opening Brief at 13; App. 109; R. Doc. 42 at 2. Elsewhere it states: "When his body was found, the needle was still in his arm." Opening Brief at 41.

  **Response:** These statements are entirely fictional. The investigating officer's report, on which the pleading relies makes clear that the needle was *not* found in Mr. Yates arm. App. 143; R. Doc. 42-2 at 3. The investigating officer reported that he saw bruising on Mr. Yates' forearms when he examined his body. *Id.* After an additional officer joined him, the investigator noted, "[w]hen we rolled Yates over we located a hypodermic needle." *Id.* Whatever benefit Symetra sees in conveying an image of Mr. Yates dying with a needle in his arm, it finds no support in the record.

- "[W]e know that Mr. Yates intended to inject heroin as he had done many times before." Opening Brief at 49.

  **Response:** There is no evidence that Mr. Yates had injected heroin before and there is no evidence of the duration of Mr. Yates heroin use in the record that the District Court considered. App. 212; R. Doc. 62 at 19.

7

# III.   <u>SUMMARY OF ARGUMENT</u>

The District Court was correct to reject Symetra's attempt to avoid liability on the technical ground of Yates' failure to exhaust her administrative remedies. Yates had no plan-based administrative remedies to exhaust. The applicable ERISA plan, in this case a policy and certificate, did not set forth any appeal procedure, and Yates was not required to exhaust something that was not part of the contract and that he never could have discovered by consulting the contract. This Court has never held otherwise. On the contrary, this Court strictly construes ERISA to require that only plan terms can be relied upon or enforced, despite judicially created doctrines that suggest otherwise and regardless of whether this disadvantages plans or claimants. Any decision to the contrary would conflict with important Supreme Court mandates on this issue.

The District Court was also correct on the merits. The plain language of the "intentionally self-inflicted injury" exclusion makes clear that the insured must have intended self-harm to be subject to the exclusion. This Court has already held as much. The District Court was correct that the exclusion does not apply to "injuries that were unintended by Mr. Yates, but which were caused by his injection of heroin." Without evidence that Mr. Yates intended his death or injury, Symetra could not meet its burden to deny coverage based on the policy exclusion.

8

An ERISA insurance policy or plan must be read together as an integrated whole. Although Mr. Yates intentionally injected the drug that killed him, the District Court decided that his death was accidental under the policy and Symetra does not appeal that ruling. Therefore, Symetra's attempt to characterize Mr. Yates' intentional injection of drugs as an "intentionally self-inflicted injury" would refine the concept of accident to the point of subsuming the coverage. An exclusion must carve out some part of the already established coverage, without rendering it the policy entirely illusory. The District Court was correct that the exclusion could not be applied to Yates, especially where Symetra carries the burden and is entitled to no deference as to its interpretation of the policy.

Additionally, Symetra's proposed construction of the "intentionally self-inflicted injury" exclusion cannot be reconciled with the Symetra Certificate's exclusion for driving while under the influence of alcohol or un-prescribed drugs.

## IV.   ARGUMENT

### A.   The District Court was Correct that Exhaustion is not Enforceable Where the Formal Plan Documents Do Not Include a Review Procedure to Exhaust

Symetra argues that Yates' case should be dismissed for failure to exhaust, since she has not argued that exhaustion would have been futile. However, there is no need for Yates to invoke an exception to a rule that is not triggered in the first place. *Wallace v. Oakwood Healthcare, Inc.,* 954 F.3d 879, 886-889 (6th Cir. 2020).

9

The fact that Symetra offered Yates an appeal is irrelevant to whether Yates was obligated to exhaust, where Symetra's instructions were entirely unsupported by actual plan provisions creating administrative remedies. Furthermore, ERISA regulations create their own exception to exhaustion, deemed exhaustion, which is applied when an ERISA Plan fails to adhere to the claims regulations.

### 1. This Court Has Never Enforced an Appeal Process Expressed Only in a Benefits Denial Letter

Symetra asserts that "[i]n multiple cases, the Eighth Circuit has recognized that when a claimant receives notice of appeal rights in the decision letter, it triggers the exhaustion requirement." Opening Brief at 22. However, its excerpted passages misrepresent the holding of these cases. *Wert v. Liberty Life Assur. Co. of Bos.,* 447 F.3d 1060, 1065 (8th Cir. 2006)(distinguishing between quoted passages and holdings). Furthermore, every case Symetra cites is inapposite, as none involves a situation where the formal plan documents do not include an appeal procedure. There is no case in which this Court has held that an ERISA claimant was required to exhaust a procedure that was not reduced to writing in plan documents.

In *Kinkead*, this Court considered whether a denial letter was sufficient where it did not advise the claimant that exhaustion of the *contractual* appeal procedure was mandatory; it did *not* consider or decide that a denial letter, on its own, could create an appeal procedure. On appeal, the issue was whether "Kinkead failed to

Appellate Case: 22-1093    Page: 21    Date Filed: 05/10/2022 Entry ID: 5155888

exhaust her *contractual* plan remedies." *Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan,* 111 F.3d 67, 68 (8th Cir. 1997)(emphasis added).

The administrator wrote to Kinkead denying her benefits and quoting the language of the contractual appeal procedure. *Id.* at 69. Kinkead argued that the language of the letter was inadequate because it did not make clear that the review procedure was mandatory. *Id.* Citing the ERISA statute and claims regulations, this Court explained, "[n]ot surprisingly, therefore, the Bell plans at issue contain provisions requiring that participants be notified of claim denials and *establishing an internal procedure for further review*."[3] 111 F.3d at 68 (emphasis added). It continued,"[g]iven the practical reasons favoring exhaustion, claimants with notice of an available review procedure should know that they must take advantage of that procedure if they wish to bring wrongful benefit denial claims to court." *Id.* at 69. This Court appears to have imputed to the claimant knowledge of an internal written appeal procedure, where he was also put on notice of it. *Id.* However, this Court made no statement concerning whether an appeal procedure that was not in *any* plan document would be mandatory before a claimant could bring suit.[4] And it would be

---

[3] Kinkead had also argued that the contractual appeal procedure was optional by its own terms, but the Eighth Circuit did not address this issue, deeming it waived. *Id.*

[4] Judge Kyle's dissent makes the issue addressed in *Kinkead* even clearer: "I believe that a plan should be required to clearly inform a claimant that its internal review procedures must be exhausted before, and as a condition of, seeking judicial relief." *Id.* at 70.

a stretch indeed to impute to an ERISA claimant knowledge of something that she could never find in her plan documents. *Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83 (1995).

Symetra also erroneously cites *Wert* for the proposition that appeal procedures that exist only in denial letters are enforced in this Circuit. Relying on *Kinkead, Wert* held that permissive language suffices to put a claimant on notice of a plan's *contractual review procedures* for the purposes of mandatory exhaustion:

> we hold that exhaustion of contractual remedies is required in the context of a denial of benefits action under ERISA when there is available to a claimant a **contractual review procedure** that is in compliance with 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503–1(f) and (g). This exhaustion requirement applies so long as the employee has notice of the procedure, even if the plan, insurance contract, and denial letters do not explicitly describe the review procedure as mandatory or as a prerequisite to suit.

*Wert* at 1063(emphasis added). Reconciling *Wert* with its previous rulings such as *Conley* and *Anderson*, this Court wrote:

> In neither of these cases did we face an issue squarely on point with the present case, namely, whether the exhaustion requirement applies when there is plan language setting forth a review procedure compliant with ERISA and undisputed notice to an employee regarding the *availability* of contractual review, albeit without express language concerning the *mandatory nature* of that review as a prerequisite to suit.

*Id.* at 1063-1064 (citing *Conley v. Pitney Bowes,* 34 F.3d 714 (8th Cir. 1994) and *Anderson v. Alpha Portland Indus., Inc.,* 752 F.2d 1293 (8th Cir. 1985)).

Appellate Case: 22-1093    Page: 23    Date Filed: 05/10/2022 Entry ID: 5155888

While *Wert* clarified that the Eighth Circuit has relaxed linguistic requirements for contractual appeal procedures, meaning it will enforce contractual review provisions that use permissive language, nowhere in *Wert* does this Court do away with the need for an appeal procedure to appear in the written plan documents.[5] *Id.*

Nor is there any other case in which this Court required exhaustion of an appeal procedure that was not part of the written plan, and Symetra points to none. In *Burds*, this Court required exhaustion of ERISA §510 claims under the specific facts of that case where the written plan included administrative remedies:

> The district court noted that although ERISA itself contains no exhaustion requirement, beneficiaries must exhaust their administrative remedies if such exhaustion is mandated by the ERISA plan at issue. The district court is correct. It is well-established that when exhaustion is clearly required under the terms of an ERISA benefits plan, the plan beneficiary's failure to exhaust her administrative remedies bars her from asserting any unexhausted claims in federal court.

---

[5] As it did in the District Court, Symetra relies on a single District Court case that, in addition to having no precedential value, is not on point. *Warmbrodt v. Reliance Standard Life Ins. Co.,* 2021 WL 2142433, at *8 (E.D. Mo. May 26, 2021). *Warmbrodt* concerned a claimant who had opted to participate in an (albeit) unwritten review process but sued three days before the insurer's medical examination could take place. *Id.* at *1-3. The court required plaintiff to complete the appeal process by undergoing the exam before returning to court. *Id.* Additionally*, Warmbrodt* misunderstands *Wert* to say that contractual appeal procedures are not necessary under ERISA. *Id.* at *2.

13

*Burds v. Union Pac. Corp.,* 223 F.3d 814, 816–17 (8th Cir. 2000). In *Chorosevic* plaintiff's lawsuit was dismissed for failure to exhaust the SPD's two-tiered appeal process within the contractual timeframe. *Chorosevic v. MetLife Choices,* 600 F.3d 934, 944-945 FN10 (8th Cir. 2010); *Angevine v. Anheuser-Busch Companies Pension Plan,* 646 F.3d 1034, 1038 (8th Cir. 2011)(requiring exhaustion of a written plan requirement to file an application for benefits where claimants immediately filed suit after receiving an email that appeared to violate the plan).

However, this Court has insisted that claimants be apprised of existing plan procedures and has refused to require exhaustion without this notice. *Conley* at 716; *Back v. Danka Corp.,* 335 F.3d 790, 792 (8th Cir. 2003)(refusing to enforce a requirement that claimants file a written application as required by the plan document, where the claimant was not put on notice of the procedure). Given the importance of notice, it would make little sense to permit what has occurred here - false notice of a procedure that, in fact, was not required by the plan itself. Symetra's admonishment that the law of this Circuit must be followed unless overruled is irrelevant, where there is no Eighth Circuit case requiring exhaustion in the absence of a plan-based procedure. Opening Brief at 22.

## 2. *Anderson* Should Govern the Resolution of this Case

Importantly, and perhaps determinatively, this Court has refused to enforce exhaustion against retirees where the grievance procedure in the plan document did

14

not specifically apply to this group of beneficiaries. *Anderson v. Alpha Portland Industries, Inc.,* 727 F.2d 177, 180 (8th Cir. 1984), *aff'd,* 752 F.2d 1293 (8th Cir. *en banc* 1985). In *Anderson,* an arbitration process required exhaustion, but its terms did not include language applying it to retirees as a class of participants. *Id.* at 1295. This Court concluded that the presumption in favor of arbitrability could not overcome the absence of any provision requiring the retirees to engage in the procedure. *Id.* at 1300. *Anderson*, in turn, followed a Supreme Court ruling, *Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364 (1984). *Id.* at 1295. *Schneider* held that trustees were not required to exhaust an arbitration procedure before suing employers where the written contractual provision did not apply to trustees. 466 U.S. at 373-376. Accordingly, the importance of the *Anderson* decision is its insistence that only *contractual* provisions can be enforced against an ERISA litigant to require exhaustion despite the existence of a presumption that militates in favor of another approach.

The differences between *Anderson* and this case are not material. There is no reason to enforce an imaginary appeal procedure against one ERISA claimant, while refusing to enforce an existing, but inapplicable, appeal procedure against another ERISA claimant. There is also no reason that it would be less important to enforce an arbitration provision than a standard appeal provision. On the contrary, the presumption in favor of arbitrability should be stronger, as it was created by statute,

15

whereas the exhaustion doctrine was judicially created. 9 U.S.C.A. § 2. As this Court wrote, relying on *Anderson*, "*the freedom of contract between autonomous parties is a more important principle than even the very important judicially-created doctrine of exhaustion.*" *Conley* at 716 (emphasis added).

Avoiding *Anderson*, Symetra points to out-of-circuit cases that do not support its contention that an unwritten appeal procedure can be enforced. *Schorsch* does not address the issue before this Court. Schorsch argued that because of other procedural irregularities the administrator should be estopped from asserting the exhaustion defense, but he did not mount an argument that there was no administrative remedy to exhaust, which is the issue here. *Schorsch v. Reliance Standard Life Ins. Co.,* 693 F.3d 734, 739 (7th Cir. 2012). Although, *Schorsch* concerns a claimant's failure to exhaust, it does not address whether the review procedure was set forth in the plan documents, as the claimant apparently did not obtain the plan documents.[6] *Id*. at 736.

*Holmes* concerned the written terms of an ERISA-governed policy that permitted the plan to require two appeals and an SPD that did not mention a two-step appeals process. *Holmes v. Colorado Coal. for Homeless Long Term Disability Plan,* 762 F.3d 1195, 1199-1200 (10th Cir. 2014)("To determine whether Ms. Holmes was required to pursue a second-level review before she could file a

---

[6] As an additional matter, the Seventh Circuit reviews District Courts' decisions on exhaustion for abuse of discretion, not the *de novo* standard that applies here. *Angevine* at 1037.

Appellate Case: 22-1093    Page: 27    Date Filed: 05/10/2022 Entry ID: 5155888

civil action, we must first identify the documents that control her obligations under ERISA."). The letter to Holmes set forth a more fleshed out process and indicated that exhaustion of the two-step process was mandatory, which the court concluded did not contradict the policy. *Id.* at 1203. *Holmes* did not concern a letter that was relied upon as the only source of an appeal procedure. In a scheme where the plan participant should be able to discern her rights by consulting the terms of the written plan, there is an enormous gulf between enforcing a procedure that is not referenced in any plan document, and one that is at least mentioned if not perfectly described. *Curtiss-Wright*, 514 U.S. 73, 83.

Neither the Safeco Policy nor the Symetra Certificate hinted at an appeal procedure, so consulting the policy could only have reassured Yates that an appeal was not mandatory. And Symetra should not be able to benefit from its misleading communication. Misleading a plan participant about plan terms is a breach of fiduciary duty, as it is inconsistent with the duty of loyalty that ERISA plan administrators owe to their beneficiaries. *Varity Corp. v. Howe,* 516 U.S. 489, 506 (1996). Although Yates is not seeking a remedy for this breach, Symetra falsely created the impression that there was an appeal procedure to exhaust. Given that a fiduciary can be successfully sued for the behavior Symetra demonstrated, it is even clearer that its denial letter cannot be the source of Yates' obligation to exhaust.

17

The Second Circuit observed the following in refusing to require exhaustion based on a retroactive amendment to a plan that formerly did not include an appeal procedure:

> Plans without ERISA-compliant claims procedures in place would have the power to force claimants, first, to resort to litigation to obtain their benefits, and then, to abandon their suit at whatever point (prior to final judgment) the plan adopted a claims procedure. On Bayer's interpretation, far from encouraging plans to meet their obligations under ERISA, the regulation would give plans every incentive to delay adopting claims procedures as long as possible.

*Eastman Kodak Co. v. STWB, Inc.,* 452 F.3d 215, 222 (2d Cir. 2006). Symetra's effort to belatedly impose an exhaustion requirement on Yates and bar her access to court, based on its letter denying benefits, is even weaker than Kodak's, which at least employed a formal amendment procedure involving actual plan documents. *Id.* at 218. Letters are not plan documents and do not create plan terms by which a claimant can be bound. Furthermore, enforcing Symetra's letter against Yates would create a more perverse incentive than the one described by the Second Circuit. It would essentially permit an informal amendment procedure, which ERISA does not contemplate. 29 U.S.C. § 1022(a); §1024(b)(1)(A), (B). For that matter, allowing a letter to create a procedure would allow for potential abuse, because insurers could make up plan procedures to suit a given situation. Notably, the Symetra policy has been amended numerous times but never to insert an appeal procedure of any kind.

Appellate Case: 22-1093     Page: 29     Date Filed: 05/10/2022 Entry ID: 5155888

3.      **Common Law Doctrines Do Not Make Way for an ERISA Claims Administrator or a Court to Impose Extra-Contractual Terms**

This Court does not place common-law doctrines ahead of plan terms - which ultimately is the issue in this case. *Admin. Comm. of Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Shank,* 500 F.3d 834, 838 (8th Cir. 2007)(cert denied). It has explicitly refused to "apply common law theories to alter the express terms of a written plan." *Id.*

In S*hank*, this Court ruled that the equitable make-whole doctrine, which would normally reduce a plan administrator's entitlement to subrogation, was inapplicable where the written plan provided otherwise. *Id.* at 839. Rejecting plaintiff-appellant's argument, it explained, "[i]ndeed, ERISA's mandate that '[e]very employee benefit plan shall be established and maintained pursuant to a written instrument,' 29 U.S.C. § 1102(a)(1), establishes the **primacy of the written plan**." (emphasis added).

Relying on *Shank*, this Court again drew the same conclusion explaining, "the plain language of the plan is dispositive," and preserving the integrity of written ERISA plans superseded the other legal rules that the participant argued stood in the way of the plan's right to reimbursement. *Vercellino v. Optum Insight, Inc.,* 26 F.4th 464, 468 (8th Cir. 2022).

19

When called upon to decide whether an ERISA claimant could rely on an oral collective bargaining agreement to claim benefits that were not set forth in the formal plan, this court explained:

> The ERISA requirement that terms of a welfare benefit plan be committed to writing was intended to insure [sic] that employees could rely on the terms of the formal written plan provided to them without fear that unwritten, contrary terms would later surface. While these plaintiffs would be helped by a decision in their favor, such a ruling would not only fly in the face of ERISA's plain language but would also decrease protection for future employees and retirees.
>
> . . .
>
> . . . if they are to be given effect, the fruits of those bargains must be reduced to writing and incorporated, in some fashion, into the formal written ERISA plan provided to employees.

*United Paperworkers Int'l Union, AFL-CIO, CLC v. Jefferson Smurfit Corp.,* 961 F.2d 1384, 1386 (8th Cir. 1992)(citing *Moore v. Metro. Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir. 1988)); *Anderson v. Resol. Tr. Corp.,* 66 F.3d 956, 960 (8th Cir. 1995)("Because we believe the employees' assertion of an unwritten plan is essentially an attempt to show that informal communications by RTC personnel modified the written pension plan, we reject the employees' unwritten plan argument."); *See also*, *Slice v. Sons of Norway,* 34 F.3d 630, 634–35 (8th Cir. 1994)(refusing to allow estoppel to modify a plan where an erroneous written misstatement of pension benefits was sent to the participant).

The rule that ERISA plan terms must be written is a neutral one, as the quoted Eighth Circuit language form *Jefferson Smurfit* highlights. 961 F.2d 1384, 1386. That case resulted in a ruling against the plaintiff-appellant, but the same rule will sometimes favor a plaintiff, as it should here. *Jefferson Smurfit* contemplated what happened to Yates – a contrary term did surface in the form of a procedure that was described in a denial letter without being backed up by any formal plan document. ERISA claimants cannot rely on unwritten terms, nor can they be obliged to follow unwritten terms.[7]

Symetra argues that since there is no conflict between its denial letter and the formal plan documents, the District Court's ruling was wrong to conclude that the letter conflicted with the written plan. Opening Brief at 37. This implies that the importance of the integrity of the formal ERISA plan disappears if the formal plan remains silent. Opening Brief at 37. But this argument is not only absurd, it is baseless. First, silence is a conflict. *Jobe v. Med. Life Ins. Co.,* 598 F.3d 478, 483-485 (8th Cir. 2010)(discretionary language in an SPD does not provide for

---

[7] Other courts have noted the equal opportunity aspect of ERISA. *Grosz-Salomon v. Paul Revere Life Ins. Co.,* 237 F.3d 1154, 1161 (9th Cir. 2001) ("what is sauce for the gander must be sauce for the goose: if Grosz–Salomon cannot invoke Benefit Summary provisions against Paul Revere, then Paul Revere cannot invoke Benefit Summary provisions against Grosz–Salomon.")(citation omitted); *Theriot v. Bldg. Trades United Pension Tr. Fund,* 850 F. App'x 231, 240 (5th Cir. 2021) it would be unjust to excuse the Pension Fund from its mishaps while holding Theriot to every jot and tittle.").

deferential review in court, where the plan is silent on discretion). And given that an SPD cannot enlarge the authority of the plan or change its standards, a mere denial letter, which is not a plan document of any kind, cannot do so. *Ringwald v. Prudential Ins. Co. of Am.,* 609 F.3d 946, 949 (8th Cir. 2010); *CIGNA Corp. v. Amara,* 563 U.S. 421, 437 (2011).

The procedure Symetra wants enforced against Yates doesn't exist for ERISA purposes, as it never could have been found by reading the insurance policy. It goes without saying that extra-contractual terms would never be enforced in a non-ERISA insurance case. It makes even less sense to enforce one in an ERISA case. *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 115 (2008)("ERISA imposes higher-than-marketplace quality standards on insurers."); *See also*, 29 U.S.C.A. § 1001 (declaring the Congressional policy of protecting "the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.").

### 4. The District Court's Ruling Comports with The Supreme Court's Staunch Insistence on the Superiority of ERISA Plan Terms

Ultimately, ERISA fiduciaries are bound to administer plans according to their written documents. 29 U.S.C.A. § 1104(a)(1)(D). ERISA claims stand or fall by "the terms of the plan." *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan,* 555 U.S. 285, 300 (2009)(citing 29 U.S.C. § 1132(a)(1)(B)); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995)(citing ERISA's legislative history, "[a] written plan is to be required in order that every employee may, *on examining the plan documents,* determine exactly what his rights and obligations are under the plan." H.R.Rep. No. 93–1280, p. 297 (1974) U.S. Code Cong. & Admin. News pp. 4639, 5077, 5078)(emphasis added by S.Ct.)). In *Curtiss-Wright* the Supreme Court explained:

> [I]ndependent of any information automatically distributed to beneficiaries, ERISA requires that every plan administrator make available for inspection in the administrator's "principal office" and other designated locations a set of all currently operative, governing plan documents, see § 1024(b)(2), which necessarily includes any new, bona fide amendments. See also § 1024(b)(4) (requiring plan administrators, upon written request, to furnish beneficiaries with copies of governing plan documents for a reasonable copying charge). As indicated earlier, plan administrators appear to have a statutory responsibility actually to run the plan in accordance with the currently operative, governing plan documents and thus an independent incentive for obtaining new amendments as quickly as possible and for weeding out defective ones.

Appellate Case: 22-1093   Page: 34   Date Filed: 05/10/2022 Entry ID: 5155888

*Id.* at 84; *See also*, *CIGNA Corp. v. Amara*, 563 U.S. 421, 435-436 (2011)("[t]he statutory language speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them. 29 U.S.C. §1132(a)(1)(B).")(emphasis in original).

Of particular relevance here, the Supreme Court refused to import an abuse of discretion standard of review into ERISA plans unless the plan language provides for it, as a matter of both trust and contract law. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). In refusing to do so, it rejected arguments that the "spirit" of ERISA, or the interest in minimizing litigation costs, supported imposing arbitrary and capricious review, and it clarified that the extent of the authority of an ERISA fiduciary was limited to that which is vested in it by plan terms. *Id.* at 113-115.  Likewise, the Supreme Court held that doctrines such as unjust enrichment, double-recovery, and common-fund could not override the terms of an ERISA contract. *US Airways, Inc. v. McCutchen,* 569 U.S. 88, 106 (2013).[8]

Supreme Court precedent also does away with Symetra's argument that because an appeal procedure is like a statute of limitations, it does not have to be included in a plan document. First the similarity is limited, since limitations periods apply to all lawsuits, unlike the exhaustion doctrine. Furthermore, ERISA is silent

---

[8] The exception is where a state common law rule regulates insurance and escapes preemption, none of which is relevant here. *See e.g., UNUM Life Ins. Co. of Am. v. Ward,* 526 U.S. 358, 377 (1999).

Appellate Case: 22-1093    Page: 35    Date Filed: 05/10/2022 Entry ID: 5155888

on the limitations period that applies to claims for benefits under 29 U.S.C. §1132(a)(1)(B), requiring this gap to be filled with state law statutes.[9] *Heimeshoff v. Hartford Life & Acc. Ins. Co.,*571 U.S. 99, 106 (2013). An ERISA plan can *only* impose its own time limit, if it is spelled out in the plan documents, and if there is no countervailing statute. *Id*. at 108-109. This is, again, because "the plan . . . is at the center of ERISA." *Id*. at 108. There is no policy rationale that would justify imposing a shorter limitations period by means of a denial letter and nothing more. This would be unthinkable under ERISA, where rights and duties are "built around reliance on the face of written plan documents," *Id*. at 109. (internal citations omitted). The same is true of a purported appeal procedure that is expressed only in a letter, as is the case here. So again, when this Court explained: "the freedom of contract between autonomous parties is a more important principle than even the very important judicially-created doctrine of exhaustion," it was consistent with the Supreme Court's refusal to permit judicially created doctrines to override plan terms. *Conley* at 718.

---

[9] It does prescribe limitations periods for other types of suits under ERISA. 29 U.S.C. § 1113.

### 5. No Purpose of Exhaustion Would Have Been Served By Requiring it Under The Circumstances of This Case

"[F]ederal courts lack authority to fashion a rule of federal common law that conflicts with the written plan and that is unnecessary to achieve the purposes of ERISA" *Shank* at 839.

While Symetra continually emphasizes the multiple purposes of exhaustion, it cannot point to one that is implicated in this case. First, the utility of exhaustion is at its weakest when the standard of review is *de novo,* as it was here. *Kinkead* at 68 (noting that when review is deferential to the plan administrator, exhaustion gives the administrator an opportunity to interpret the plan); *Wert* at 1066 (explaining that the rationale for exhaustion is important because, in many cases, review is for "abuse of discretion on the record considered by the plan decision-maker")(citing *Kinkead*); *Paese v. Hartford Life & Acc. Ins. Co.,* 449 F.3d 435, 444 (2d Cir. 2006); *Dozier v. Sun Life Assur. Co. of Canada,* 466 F.3d 532, 536 (6th Cir. 2006)(refusing to require exhaustion where no purposes of exhaustion were invoked and there were advantages to not requiring exhaustion); *Metro. Life Ins. Co. v. Price,* 501 F.3d 271, 282 (3d Cir. 2007)(excusing "reverse exhaustion" by interpleading insurer because there would be *de novo* review in court)[10].

---

[10] Reverse exhaustion is the requirement that the insurer cannot interplead until it has rendered a final decision. *Id.*

Appellate Case: 22-1093    Page: 37    Date Filed: 05/10/2022 Entry ID: 5155888

Here, Symetra was owed no discretion, meaning the District Court would (and did) interpret the policy *de novo*. *McKeehan v. Cigna Life Ins. Co.,* 344 F.3d 789, 793 (8th Cir. 2003). Indeed, this case does come down to the interpretation of the accident policy's "intentional self-inflicted injury" exclusion. The dispute over the interpretation does not require further administrative exploration, as Symetra has made itself clear. In fact, Symetra had already refined its position in its summary judgment motion, where it relied exclusively on the "intentionally self-inflicting injury" exclusion and not the coverage provision. Appellee's App. 5-15; R. Doc. at 5-15; App. 209, FN8; R. Doc. 62 at 16 FN8.

Symetra has never argued that more factual development is necessary, and it opposed all of Yates' attempts to introduce evidence that elucidated the circumstances under which Mr. Yates died and his likely intent, moving for summary judgment on the un-augmented record. Appellee's App. 1-4.; R. Doc. 49 at 1-4. The District Court sided with Symetra on the scope of the record. App. 168-169; R. Doc. 54 at 3-4; App. 203-204; R. Doc. 62 at 10-11. The resulting grant of summary judgment in favor of Yates (the non-movant) was based on a record that was as un-favorable as possible to her, making exhaustion not only irrelevant but

inefficient and a waste of judicial resources. No possible purposes of exhaustion could be served here.[11]

For similar reasons, Symetra's request for a remand at this late date should be rejected.[12] The District Court's choice whether to remand is reviewed for abuse of discretion. *Willcox v. Liberty Life Assurance Co. of Boston,* 552 F.3d 693, 703 (8th Cir.2009). To describe remand as a "useless formality" under the circumstance of this case would be a serious understatement. *Welsh v. Burlington N., Inc., Emp. Benefits Plan,* 54 F.3d 1331, 1340 (8th Cir. 1995). Again, Symetra's view of the policy exclusion is understood and there are no additional facts necessary to decide the case. *See e.g., Santaella* at 465 (refusing to remand where neither party suggests any meaningful augmentation of the record and there is no reason to hesitate to grant summary judgment); *Kovach v. Zurich Am. Ins. Co.,* 587 F.3d 323, 339 (6th Cir. 2009)(awarding benefits because "[t]he case before us has no unresolved factual

---

[11] Symetra quibbles with the District Court's discretionary decision in its original ruling in favor of Symetra in which it dismissed Yates' claim without prejudice. This was appropriate, however. *Back v. Danka Corp.,* 335 F.3d 790, 792 (8th Cir. 2003); *Burds v. Union Pac. Corp.,* 223 F.3d 814, 818 (8th Cir. 2000); *Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*, 872 F.2d 80, 83 (4th Cir. 1989).

[12] Symetra appears to make its own argument for futility here. Symetra denied the original claim on the merits after considering the information before it. It then argued for the same result before the District Court and is now again arguing for the same result before this Court. Its suggestion that a remand would have been proper implies that if only Yates had submitted an appeal, there might have been a different result, where this is obviously not so.

28

issues; instead, its resolution revolves around the proper interpretation of the Plan provisions—a question of law that we have answered in the Kovaches' favor.").

Symetra is wrong that *Brown* mandates a remand here, as it presented a different problem. *Brown v. J.B. Hunt Transp. Servs., Inc.,* 586 F.3d 1079 (8th Cir. 2009). There, neither the claims administrator nor the District Court had addressed the merits of Brown's case, making it necessary for this Court to remand. *Brown v. J.B. Hunt Transp. Servs., Inc.,* No. 4:08CV00089-WRW, 2008 WL 4079822 (E.D. Ark. Aug. 28, 2008); *See also*, *Makar v. Health Care Corp. of Mid-Atl. (CareFirst),* 872 F.2d 80, 83 (4th Cir. 1989)(remanding to dismiss without prejudice to permit an appeal when there was no record on which to decide the case).

District Court concluded exhaustion was not required and it granted summary judgment in Yates' favor. App. 222; R. Doc. 62 at 222. In doing so it concluded that the record required no augmentation because the record was adequate for it not only to conduct *de novo* review, which was a discretionary decision. App. 204; R. Doc. at 62. *Davidson v. Prudential Ins. Co. of Am.,* 953 F.2d 1093, 1095 (8th Cir. 1992).

Indeed, a remand would defeat important purposes of ERISA and exhaustion, *i.e.,* to enable parties to resolve claims matters efficiently and at lower cost, without wasting judicial resources. *Metro. Life Ins. Co. v. Price,* 501 F.3d 271, 282 (3d Cir. 2007); *Dozier* at 536. Here, the merits have been fully briefed and decided, and this Court's need to remand to avoid becoming a trial court or claims administrator is not

implicated. Moreover, as this Court has observed, "the reviewing court may determine that the administrative record, though procedurally flawed, established that the denial of benefits 'was not supportable,' in which case the court may award the denied benefit rather than remanding. *Grasso Enterprises, LLC v. Express Scripts, Inc.,* 809 F.3d 1033, 1039 (8th Cir. 2016); *See also*, *Card v. Principal Life Ins. Co.,* 17 F.4th 620, 627 (6th Cir. 2021)(Murphy concurring)(doubting that the Supreme Court would agree that the court has the authority to remand to a private litigant as opposed to completing the proceedings in the court).

## B.   The District Court was Correct that Yates' Claim was Deemed Exhausted

Although it is not necessary for this Court to reach this issue, the District Court correctly determined that Yates' claim was deemed exhausted due to the plan's failure to include an appeal procedure in formal plan documents.

The ERISA regulations provide that where a plan is non-compliant, a claimant can pursue his benefits in court:

> [I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. §2560.503-1(l)(1).

Appellate Case: 22-1093   Page: 41   Date Filed: 05/10/2022 Entry ID: 5155888

ERISA provides that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). The plan must "describe any procedure for amending such plan, and for identifying the persons who have authority to amend the plan." §1102(b)(3).

Pursuant to ERISA section § 1133, the Department of Labor issued the following regulation:

> Every plan shall establish and maintain a procedure by which a claimant or his duly authorized representative has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary ... under which a full and fair review of the claim and its denial may be obtained.

29 C.F.R. § 2560.503–1(g)(1)(iv).

As a matter of the statute and regulations, a "procedure" providing for an appeal must be written in an SPD and even the style of the writing is mandated. Participants must be furnished with an SPD that "**shall** include" "the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 1133 of this title)"). 29 U.S.C.A. § 1022(b). The SPD "**shall be written** in a manner calculated to be understood by the average plan participant, and **shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and**

31

**obligations under the plan."** 29 U.S.C. § 1022(a)(emphasis added); 29 C.F.R. §2520.102-2; 29 C.F.R. § 2520.102-3(s).

An ERISA plan administrator must keep copies of the plan documents "under which the plan was established **or is operated** available for examination" and must provide them upon request. 29 U.S.C.A. § 1024(b)(2), (4) (emphasis added).

Circuit courts that have addressed this issue have concluded that deemed exhaustion applied to the situation here, where the plan documents lack a written appeal procedure. See *Eastman Kodak Co. v. STWB, Inc.,* 452 F.3d 215, 221 (2d Cir. 2006)(holding claimant was not required to exhaust administrative remedies where a plan did not have a procedure in place and retroactively amended the plan to impose one); *Wallace* at 887(". . . we hold today that for a plan fiduciary to avail itself of this Court's exhaustion requirement, its underlying plan document must— at minimum—detail its required internal appeal procedures").

Symetra argues - despite the inescapable list of statutory and regulatory provisions regarding committing appeal procedures to writing in documents that can be distributed to plan participants, and rulings from the Supreme Court, this Court and other courts on the importance of written plan terms - that a written appeal procedure is not required. Opening Brief at 32-33. To Symetra, this clears the way for it to require exhaustion of administrative remedies from a claimant who learns of an otherwise non-existent procedure only by means of a letter. Here, the

documents comprising the plan contain no appeal procedures even after years of amendments. There is no SPD to rely upon, a statutory and regulatory violation of its own. Yates was entitled to proceed to court because "the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. §2560.503-1(l). "[T]he regulation may not be circumvented by a plan's belated creation of an ERISA-compliant claims procedure." *Eastman Kodak* at 222. Symetra's attempt to unilaterally create an obligation to exhaustion by means of a letter to an individual claimant must fail. It does not even amount to an ERISA complaint claims procedure as it was not enacted by means of a plan document.

Moreover, the decision as to what to include in Phelps County Bank's benefit plan was ultimately the Bank's to make, not Symetra's, since the bank is the employer/plan sponsor. *CIGNA Corp. v. Amara* at 437("The plan's sponsor (e.g., the employer), like a trust's settlor, creates the basic terms and conditions of the plan, executes a written instrument containing those terms and conditions, and provides in that instrument 'a procedure' for making amendments. § 402, 29 U.S.C. § 1102. The plan's administrator, a trustee-like fiduciary, manages the plan, follows its terms in doing so, and provides participants with the summary documents that describe the plan (and modifications) in readily understandable form."). In fact, in the District Court Symetra stated, without legal or factual support, that "[i]t is Symetra's procedure to notify a claimant through the denial letter." App. 189; R. Doc. 58 at 5.

33

Although Symetra has not repeated this unsupported assertion of counsel in this Court, based on Symetra's continued assertion that the language in its denial letter is enforceable, despite silence on this issue in the plan documents, it is clear it still believes ERISA affords it the legal right to create an appeal procedure all on its own. Symetra is wrong, however, as it was not endowed with the authority to require plan standards that are not articulated in the ERISA plan itself. *Morgan v. Mullins,* 643 F.2d 1320, 1321 (8th Cir. 1981).

Symetra also argued in the District Court that its approach was preferable: "A person receiving a denial letter will see their appeal rights. But if appeal rights are only stated in the plan document as Plaintiff suggests, the claimant may not review it in response to receiving a denial letter. The purpose of the regulation is better served by including appeal rights language in the decision letter which a claimant will always know to review." App. 189; R. Doc. 58 at 5. First, appeal rights cannot "only" be in plan document; they must be both in a plan document and a denial letter. *Conley*, 34 F.3d 714, 716. Second, whether it is preferable to spell out plan terms in a written plan document was a decision already made by Congress with the assistance of the Department of Labor. Symetra's preference is neither relevant nor enforceable.

At best, Symetra invited Yates to engage in an appeal. Yes, Yates had a right to appeal. What she did not have was an *obligation* to appeal or to exhaust an appeal

process before suing to enforce her rights. It should be noted that Yates' decision not to appeal was not without consequences. District Court refused to allow her to augment the record with information that went to the merits of her claim. App. 203-204; R. Doc. 62 at 10. But as the District Court correctly concluded, it could not refuse to hear her claim.

Regardless of the content of Symetra's letter, the Phelps County Bank ERISA accidental death and dismemberment plan lacks a crucial provision. Yates' initiation of litigation was proper under ERISA's deemed exhausted exception.

### C. Substantial Compliance Does Not Apply Where There is No Compliance with the Requirement to Have a Written Appeal Procedure

Symetra invokes the common-law doctrine, substantial compliance,[13] to support its argument that another common-law doctrine, exhaustion, should be imposed on Yates. However, there is no evidence of anything that was *almost* done properly. There is no evidence that the policy *almost* included an appeal procedure. *Jensen v. SIPCO, Inc.,* 38 F.3d 945, 950 (8th Cir. 1994). It is not the case that an appeal procedure was spelled out in the plan but was not followed to a T, something

---

[13] Symetra argues that the standard is the "substantively equivalent standard," but Symetra misreads *Grasso*. There, this Court said it had not formally adopted the substantial compliance standard but had adopted a standard that is "substantively equivalent" to the substantial compliance standard." *Grasso Enterprises, LLC v. Express Scripts, Inc.,* 809 F.3d 1033, 1038 (8th Cir. 2016).

35

that might be justified as a matter of substantial compliance. *See e.g., DuMond v. Centex Corp.,* 172 F.3d 618, 623 (8th Cir. 1999). *Cf. Cooper v. Metro. Life Ins. Co.,* 862 F.3d 654, 663 (8th Cir. 2017)(no lack of full and fair review where the regulations require that health care professional have appropriate training and a nurse with unspecified training was consulted). Yates can find no Eighth Circuit case that applies substantial compliance to these facts, where the appeal procedure is a contractual nullity.

*Grasso* says nothing about this. 809 F.3d 1033, 1040. In *Grasso* this Court declined to grant an injunction to determine what would constitute a compliant regulatory appeal process. *Id.*

And Symetra grossly overstates the relevance of *Perrino.* In *Perrino,* there was a detailed grievance procedure spelled out in a collective bargaining agreement. *Perrino v. S. Bell Tel. & Tel. Co.,* 209 F.3d 1309, 1313 FN4 (11th Cir. 2000). A collective bargaining agreement, unlike a letter, is an ERISA plan document. *Wilson v. Moog Auto., Inc. Pension Plan & Tr. for U.A.W. Emps.,* 193 F.3d 1004, 1009 (8th Cir. 1999)(citing 29 U.S.C.A. § 1024(b)(2)). The plaintiffs in *Perrino* never argued the claims were "deemed exhausted" but were looking for relief from exhaustion based on the lack of an SPD and lack of specificity in the bargaining agreement's grievance procedure as to whether the procedure applied to their claims. *Id.* at 1316. The Eleventh Circuit rejected these arguments as exceedingly technical because the

Appellate Case: 22-1093    Page: 47    Date Filed: 05/10/2022 Entry ID: 5155888

grievance procedure was widely used and Perrino, himself, knew of the written procedure. *Id*. at 1316-1317. Additionally, *Perrino* was reviewed for "clear abuse of discretion," not the *de novo* standard that applies in this case as to whether exhaustion is required. *Id.* at 1315. But most importantly, *Perrino* cannot be reconciled with *Anderson*, discussed above, where this Court refused to require exhaustion of a grievance procedure that did not apply to a particular set of participants. *Anderson v. Alpha Portland Industries, Inc.,* 727 F.2d 177, 180 (8th Cir. 1984), *aff'd,* 752 F.2d 1293 (8th Cir. *en banc* 1985).

The compliance here was not substantial or even insubstantial. There was no compliance. Substantial compliance cannot be used to block or delay Yates' access to federal court. *Eastman Kodak Co.* at 223.

### D.   Mr. Yates' Death was Not an "Intentionally Self-Inflicted Injury"

Symetra is not arguing that Mr. Yates' death was not accidental. Rather it is arguing an exclusion applies, where it has the burden. *Nichols v. Unicare Life & Health Ins. Co.,* 739 F.3d 1176, 1184 (8th Cir. 2014).

To construe an ERISA-governed insurance policy this Court reads "each provision consistently with the others and as part of an integrated whole so as to render none of them nugatory and to avoid illusory promises." *Wilson v. Prudential Ins. Co. of Am.,* 97 F.3d 1010, 1013 (8th Cir. 1996); *Bond v. Cerner Corp.,* 309 F.3d 1064, 1067–68 (8th Cir. 2002).

### 1. Symetra's Construction Conflicts with the Exclusion's Plain Language

In conducting *de novo* review of an ERISA plan this Court gives the terms their "common and ordinary meaning as a reasonable person in the position of the [plan] participant." *Adams v. Cont'l Cas. Co.,* 364 F.3d 952, 954 (8th Cir. 2004). This comports with ERISA's requirement that plans be "written in a manner calculated to be understood by the average plan participant," *Spizman v. BCBSM, Inc.,* 855 F.3d 924, 927 (8th Cir. 2017)(citing 29 U.S.C. § 1022(a)).

Turning to the policy language, the exclusion reads:

> Symetra will not pay for any loss caused wholly or partly, directly or indirectly, by:
> . . .
>
> (d) intentionally self-inflicted injury, while sane

App. 131; R. Doc. 42-1 at 20.

This provision does not speak to just any self-inflicted injury, which could describe a number of things including injuries suffered in a single vehicle car accident, but to a self-inflicted injury that is intentional. To put it differently, there must be intended self-harm. No ordinary insured would read the policy as Symetra does – to mean that any voluntary act that results in a loss or injury constitutes a "intentionally self-inflicted injury."

This is precisely what this Court concluded in *King*: "The most natural reading of the exclusion for injuries contributed to by 'intentionally self-inflicted injury,

suicide, or attempted suicide' does not include injuries that were unintended by the participant, but which were contributed to by alcohol intoxication." *King v. Hartford Life & Acc. Ins. Co.,* 414 F.3d 994, 1004 (8th Cir. 2005)(citing, *Santaella v. Metro. Life Ins. Co.,* 123 F.3d 456, 465 (7th Cir. 1997)); *Kovach v. Zurich Am. Ins. Co.,* 587 F.3d 323, 339 (6th Cir. 2009)(holding it was arbitrary and capricious to determine that loss of leg due to motorcycle accident while intoxicated was excluded under the policy's "self-inflicted wound" exclusion)(relying on *King*).

 As the District Court held Symetra's interpretation was "error" because it "interprets the Policy's intentionally self-inflicted injuries exclusion to conflate Mr. Yates' intentional *actions* with intentional *results.*" App. 221; R. Doc. 62 at 28.

Symetra makes a particularly implausible argument, that because the decedent in *King* was intoxicated *and* undertook the additional perilous act of driving his motorcycle, *King* is distinguishable. Opening Brief at 47-48. However, it makes no sense that the far riskier, and obviously intentional behavior of drinking in addition to driving a motorcycle, would not exclude his death from coverage whereas Mr. Yates' act of taking drugs before going to bed, would be excluded. If anything, the decedent's actions in *King* appear to be far more intentional for the purposes of an "intentional self-inflicted injury" exclusion.

Symetra's observation that "[t]he heroin did not enter Mr. Yates' body by chance. He purposely/intentionally injected it," is beside the point, as it does not

account for the obvious requirement that the injury to be intentional. Opening Brief at 42. *Edwards v. Bus. Men's Assur. Co. of Am.,*168 S.W.2d 82, 93–94 (1942)("A person may shoot himself, cut himself or take poison by accident and the resulting injury or death be self–inflicted, but wholly unintentional."). Moreover, Symetra's insistence that any intentional or voluntary act resulting in death or injury satisfies the exclusion means there would be no coverage, unless the harm came from an external source. This defies the plain language of the policy because there is no term supporting such an interpretation.

Should this Court question what activities the intentionally self-inflicted injury exclusion might apply to under the narrower but more natural reading, there are human behaviors involving intentional self-harm where death is not the desired outcome.         https://www.medicalnewstoday.com/articles/self-inflicted-injury; https://medical-dictionary.thefreedictionary.com/Self-inflicted+injury.         The exclusion could conceivably apply to instances where the intent to harm oneself was clear, but the insured had no intent to die, or the suicidal intent could not be proven. Of note, the policy here provides benefits for accidents that do not result in death, where this exclusion might be more broadly applicable, such as where the deliberate self-harm resulted not in death but in an unfortunate and unplanned loss of a limb or disability. App. 130, 132-133; R. Doc. 42-1 at 19, 21-22.

40

It makes no linguistic sense to interpret the exclusion here to remove from coverage a death that resulted from an activity about which there is no evidence that self-harm was the intended result.

### 2. Symetra's Construction of the Intentionally Self-Inflicted Injury Exclusion Impermissibly Swallows the Coverage

Symetra has conceded that Mr. Yates' death was an accident and is only appealing the District Court's refusal to apply the exclusion for intentionally self-inflicted injuries. Opening Brief at 12. *King v. Hartford Life & Acc. Ins. Co.,* 414 F.3d 994, 1017 FN12(8th Cir. 2005)(describing an exclusion as "a benefit that meets the rule of coverage under the plan (e.g., meets the definition of 'accident'), but nonetheless is not covered under the terms of the plan."). The ruling that Mr. Yates' death was accidental is the law of the case, an un-appealed final decision by the district court. *First Union Nat. Bank v. Pictet Overseas Tr. Corp.,* 477 F.3d 616, 620 (8th Cir. 2007).

Symetra's argument for reversing the District Court's ruling is essentially that because Mr. Yates' injection of heroin was voluntary, he should have expected death as an outcome because he engaged in risky behavior. However, this is the same argument that must be, and was, rejected with regard to the question whether Mr. Yates' death was an accident. Thus, the problem with Symetra's position on the exclusion it is nothing more than a re-litigation of the same question that led to the determination that his death was accidental.

41

This Court, when presented with a question of whether a death or injury is accidental for the purposes of an ERISA AD&D policy, applies the prevailing common law standard that originated in the First Circuit's ruling in *Wickman v. Nw. Nat. Ins. Co.,* 908 F.2d 1077, 1084-1089 (1st Cir. 1990);[14] *McClelland v. Life Ins. Co. of N. Am.,* 679 F.3d 755, 760-761 (8th Cir. 2012); *Nichols at* 1182. As this Court has explained, under *Wickman,* a death is accidental if the insured did not subjectively expect to suffer the type of injury that occurred, and the suppositions underlying that expectation were reasonable from the perspective of the insured. If the decedent's expectations are unknown, the question is then whether "a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." *Nichols* at 1182. As is the case here, the decedent in *Nichols* voluntarily took drugs and died. *Id.* at 1183. In *Nichols,* this Court, applying *Wickman,* held that the death by drug overdose was accidental where the decedent had regularly taken drugs, there was no evidence of suicide, and a reasonable person with her characteristics would not have viewed death as highly likely. 739 F.3d 1176, 1183. This Court rejected the insurer's argument that taking drugs was "an

---

[14] *Wickman* sets forth the prevailing common law test, and this Court has not disavowed it. Regardless, as noted, the standard is the law of this case. 477 F.3d 616, 620.

Appellate Case: 22-1093    Page: 53    Date Filed: 05/10/2022 Entry ID: 5155888

intentional act for which a reasonable person would have expected death as the outcome." *Id.* at 1182.

Even where this Court has not applied *Wickman*, its conclusion regarding whether death by an accidental overdose was accidental was the same. *Sheehan v. Guardian Life Ins. Co.,* 372 F.3d 962, 967 (8th Cir. 2004). Where all of the evidence indicated that Sheehan accidentally took a lethal dose of morphine, his death was an accident. *Id.* at 967. In *Sheehan*, the decedent suffered from neck pain and had become addicted to pain killers, causing his doctors to refuse to treat him due to his narcotic seeking habits. *Id.* at 966. A hospice patient gave Sheehan medicine in an Aleve bottle to relieve his pain. *Id.* While it may not have been clear whether Sheehan knew the Aleve bottle contained morphine, he intentionally took the substance in the context of other facts suggesting he was drug seeking.[15] *Id.*

These rulings comport with the purpose of accident insurance. "As the *Wickman* court noted, people buy accident insurance to protect themselves against their own negligence—that is, voluntary but imprudent conduct that may with reasonable foreseeability result in injuries or even death." *King v. Hartford Life & Acc. Ins. Co.,* 414 F.3d 994, 1008 (8th Cir. 2005)(concurring, Bright); *Wickman*

---

[15] While Symetra argues that *Sheehan* is distinguishable, the differences are insignificant. In both cases the decedents took the ultimately lethal medications on purpose. In neither case was there evidence that the lethality of the dose was known to the decedent.

Appellate Case: 22-1093    Page: 54    Date Filed: 05/10/2022 Entry ID: 5155888

*v. Nw. Nat. Ins. Co.,* 908 F.2d 1077, 1088 (1st Cir. 1990)("Generally, insureds purchase accident insurance for the very purpose of obtaining protection from their own miscalculations and misjudgments."); *Santaella v. Metro. Life Ins. Co.,* 123 F.3d 456, 465 (7th Cir. 1997)(rejecting MetLife's argument that the "intentionally self-inflicted injury" exclusion applied because "[t]he record simply will not support a determination by the trier of fact that Mrs. Eldridge did anything other than make a fatal mistake" when she died of an accidental overdose); *Padfield v. AIG Life Ins. Co.,* 290 F.3d 1121, 1130 (9th Cir. 2002)(same).

   The cases Symetra cites are inapposite. *Sigler* did not apply the ERISA common-law standards that apply here, but instead applied the lower Iowa law, which asks whether a reasonable person would have recognized that his actions *could* result in his death. *Sigler v. Mut. Ben. Life Ins. Co.,* 506 F. Supp. 542, 544 (S.D. Iowa), *aff'd,* 663 F.2d 49 (8th Cir. 1981).

   By contrast, when this Court applied Minnesota law, which is the same as the widely accepted ERISA common law standard, it held that "intent to cause a self-inflicted injury may only be inferred if his act, as intended, was 'substantially certain' to cause a bodily injury." *Am. Bankers Ins. Co. of Fla. v. Gilberts,* 181 F.3d

931, 932-933 (8th Cir. 1999)(noting it was wrong to apply *Sigler* under the applicable Minnesota standard).[16]

Symetra's reliance on *Holsinger* is also inapt. As the District Court correctly determined, *Holsinger* was disavowed by the court that originally articulated the test it applied as well as by other courts, including the Sixth Circuit. *Jessen v. Cigna Group Ins.,* 812 F.Supp.3d 805, 819 (E.D. Mich.); App. 210; R. Doc. 62 at 17. Accordingly, the District Court, applying *Wickman*, determined Mr. Yates' death was accidental, a determination Symetra does not dispute. App. 212-216. As this Court did in *Nichols*, the District Court rejected Symetra's interpretation of the policy that a foreseeable result of a voluntary act was non-accidental. App. 215; R. Doc. 62 at 22.

Accordingly, where Mr. Yates' death satisfied the insuring clause, it cannot also fail the "intentionally self-inflicted injury" exclusion. It is tautological to say that Mr. Yates' death due to his voluntary act was an accident because a reasonable person would not have understood it to be highly likely to occur, while simultaneously saying the likelihood of death from this same act rendered the loss excluded. The Seventh Circuit arrived at this very conclusion. *Santaella* at 465

---

[16] The Ninth Circuit made this observation about the difference between *Sigler* and *American Bankers* in *Padfield* and ruled that autoerotic asphyxia was not an intentionally self-inflicted injury under the ERISA common-law standard. *Padfield v. AIG Life Ins. Co.,* 290 F.3d 1121, 1129 (9th Cir. 2002).

Appellate Case: 22-1093    Page: 56    Date Filed: 05/10/2022 Entry ID: 5155888

("What we have said with respect to the accidental nature of Mrs. Eldridge's death makes it clear that MetLife cannot rely upon the 'intentionally inflicted self-injury' exclusion in the policy.").

Symetra's argument for the exclusion is nothing more than an argument that death is a reasonably foreseeable outcome of injecting heroin. However, this is a lower standard than the common law *Wickman* standard that made Mr. Yates' death an accident. Applying Symetra's proposed standard would void the insuring clause.

Mr. Yates' injection of heroin into his own body –intentional though it may have been – did not exclude his death from being accidental nor was it excluded under the policy.

### 3. Symetra's Construction Cannot Be Reconciled with the Policy's DUI Exclusion

As discussed above, this Court holds that the self-inflicted injury must be purposeful to fall under the intentionally self-inflicted injury exclusion. *King* at 1004. However, an additional reason for rejecting the application of the exclusion in *King* was that it rendered another exclusion superfluous - "taking drugs, sedatives, narcotics, barbiturates, amphetamines or hallucinogens unless prescribed for or administered to you by a licensed physician." *Id.* at 1005. Symetra urges that this distinguishes *King* from *Yates*. Opening Brief at 47. But it is wrong.

Although Yates' policy does not include the same exclusion – which in fact, would have allowed Symetra to prevail in Yates' case - it does contain another that

46

points to the same result. Here, the policy was amended to include an exclusion for driving while intoxicated or under the influence of drugs, including narcotics. App. 131; R. Doc. 42-1 at 20. This amendment suggests that there was a need for such an exclusion, meaning that the exclusion was not duplicative of another exclusion. In fact, this DUI exclusion contemplates that accident coverage *does* extend to situations where the insured is under the influence of alcohol or narcotics that he voluntarily took though it bars coverage where the insured takes the additional step of driving. In addition, it distinguishes between driving under the influence of narcotics that are voluntarily taken with a doctor's prescription and voluntarily taken without a prescription. This cannot be harmonized with Symetra's conception of the "intentionally self-inflicted injury" exclusion that would exclude all voluntary ingestions of substances that could cause harm.

Thus, Symetra is wrong when it argues that the "intentionally self-inflicted injury" exclusion is "standing alone." Opening Brief at 47. And as a matter of law, policy provisions do not stand alone but must be read in a manner that renders none of them illusory. *Wilson at* 1013.

Also militating in favor of this result is the fact that Symetra's desired exclusion could have been included in the policy to make it plain to the ordinary insured that he was not covered. *Kovach v. Zurich American Ins. Co.,* 587 F.3d 323, 338 (6th Cir.2009)("The solution for insurance companies ... is simple: add an

express exclusion in policies covering accidental injuries for driving while under the influence of alcohol, or for any other risky activity that the company wishes to exclude. Policyholders would thus be able to form reasonable expectations about what type of coverage they are purchasing without having to make sense of conflicting bodies of caselaw that deal with obscure issues of contractual interpretation."). The exclusion that Symetra wishes were in its policy was in the policy at issue in *King*. 414 F.3d 994, 1000 FN2 (8th Cir. 2005)("no benefit will be paid for a loss caused or contributed to by taking drugs, sedatives, narcotics, barbiturates, amphetamines or hallucinogens unless prescribed for or administered to you by a licensed physician.").

Symetra's proposed construction must be rejected.

### 4. Symetra Did Not Meet its Burden to Prove the Applicability of the Properly Interpreted Exclusion

Symetra's interpretation of the intentionally self-inflicted injury exclusion is wrong as a matter of basic common-law rules of interpretation. Furthermore, much as Symetra would like to ignore that it bears the burden to prove the existence of facts to support applying the exclusion to Mr. Yates, there is no evidence that the injury or the loss was intentional on Mr. Yates' part,

Symetra never developed any evidence that Yates intended to harm himself, nor can it point to any. It did not so much as investigate Mr. Yates' subjective intent and there is nothing in the record going to this question. The record considered by

48

the District Court includes no facts that support a finding that Mr. Yates' was intending to harm himself. What Mr. Yates was likely intending when he injected heroin on the night of his death is addressed in Ms. Yates affidavit that the District Court refused to consider. However, this does not ultimately help Symetra meet its burden.

Furthermore, as the District Court correctly observed, to the extent that Mr. Yates used heroin in the past - seemingly Symetra's only argument regarding Mr. Yates' level of intentionality - this does not favor Symetra, as insureds who repeat their behavior are less likely to assume that it will result in death. *Nichols* at 1183; *Padfield* at 1127; App. 212-213; R. Doc. 62 at 19. There is no way for Symetra to prove that it is more likely than not that Mr. Yates intended to injure himself, which is necessary under any rational reading of the "intentionally self-inflicted injury" exclusion.

## V.    CONCLUSION

Yates respectfully requests that this Court affirm the District Court and award Yates her benefits, costs, interest, and attorney fees.

Dated:  May 9, 2022                KANTOR & KANTOR, LLP


By___/s/ Sally Mermelstein_____
        Sally Mermelstein
        Attorneys for Plaintiff-Appellee
        Terri Yates

# **CERTIFICATE OF COMPLIANCE**

I certify that pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C)(i) this brief is reproduced using Times New Roman 14-point type, uses a proportionately spaced typeface, and contains 12,037 words, including headings, quotations, and footnotes.

DATED:  May 9, 2022    KANTOR & KANTOR LLP

         By: */s/ Sally Mermelstein*
            Sally Mermelstein
            Attorneys for Plaintiff-Appellee
            Terri Yates

Appellate Case: 22-1093  Page: 61  Date Filed: 05/10/2022 Entry ID: 5155888

## VIRUS CHECK CERTIFICATION

The electronic version of the brief has been scanned for viruses and is virus free.

DATED:  May 9, 2022                 KANTOR & KANTOR LLP


By:     */s/ Sally Mermelstein*
        Sally Mermelstein
        Attorneys for Plaintiff-Appelee
        Terri Yates

51

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2022, I electronically filed the foregoing ANSWERING BRIEF OF PLAINTIFF-APPELLEE with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*Mildred Schwam*